DAVID LUCIANI *et al.*, Plaintiffs-Appellants and Cross-Appellees, *v.* STANLEY BESTOR *et al.*, d/b/a Cabe Company, Defendants-Appellees and Cross-Appellants.

Third District    No. 81-361

Opinion filed May 17, 1982.

880

Dorothea O'Dean, of Winstein, Kavensky, Wallace & Doughty, of Rock Island, for appellants.

John M. Blachinsky and Charles Blachinsky, both of Kewanee, and Reynolds M. Everett, of Everett & Young, P. C., of Galva, for appellees.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

A five-year contract for lease and sale of business enterprises consisting primarily of a motel and restaurant lies at the heart of the litigation herein. We are not concerned today, however, with an action sounding in contract, and our task is simplified to the extent that the instant action sounds only in tort and equitable rescission. Plaintiffs, David and Naomi Luciani, appeal from judgment entered in their favor on the tort claim and against them on their claim for rescission. Defendants, Stanley and Robert Bestor, have cross-appealed only from that part of the judgment awarding plaintiffs money damages on the tort claim.

On March 3, 1979, plaintiffs filed a two-count complaint against the defendants in the circuit court of Henry County, Illinois. In count I, plaintiffs alleged that they had been damaged as a result of "false and fraudulent misrepresentations" made by the defendants to induce plaintiffs to enter into a contract to assume business premises, commonly known as the Deck, located just off of Interstate 80 in Geneseo, Illinois.

Evidence at trial established that the parties herein were social acquaintances prior to the development of circumstances giving rise to the instant litigation. Approximately in mid-March 1978, they met and discussed the possibility of defendants transferring to plaintiffs the business operations at the Deck. Negotiations ensued and led to a written memorandum of agreement which was signed on April 12, 1978. Ultimately, on May 1, 1978, the negotiations culminated in the signing of a five-year lease for the real estate and a contract for purchase of personalty used in conjunction with the leased premises.

Plaintiffs' complaint alleged six separate instances of false and fraudulent representations relative to the 1978 transaction: (1) failure to disclose the discontinuance of usage of the restaurant area by Greyhound Bus passengers; (2) failure to disclose that the Best Western franchise for the motel operation would be terminated; (3) misrepresentations in financial statements because of failure to allocate certain "spread expenses" ap-

plicable to defendants' business operations not included in the deck transaction; (4) misrepresentations in financial statements because of including income not properly allocable to the vending machines located on the Deck premises; (5) failure to disclose certain bonuses on the financial statements; and (6) improper inclusion of tips in restaurant sales on financial statements. Plaintiffs claimed damages in the amount of $150,000, representing lost profits, increased expenses and loss of employees.

In count II, plaintiffs realleged false and fraudulent representations and requested relief in the form of rescission, an accounting and restoration of the status quo. Prior to the date set for trial, plaintiffs filed a "notification of election" in which they expressed their desire to proceed on count II for equitable relief as opposed to legal damages as requested in count I.

A bench trial ensued, during which the bonus and tips issues were stricken. At its conclusion the trial court entered its order finding no actionable fraud on the part of the defendants as to Greyhound, Best Western and spread expenses. The court awarded plaintiffs $11,727 upon a finding of negligent misrepresentation in connection with the vending machine portion of the parties' transaction. From this judgment, plaintiffs have appealed and defendants have cross-appealed, as aforesaid.

Neither party on appeal contests the striking of plaintiffs' allegations of fraud with respect to the bonuses and tips. The issues pertaining to the four remaining allegations of fraud are: (1) whether the trial court's denial of rescission is contrary to the manifest weight of the evidence and an abuse of discretion; (2) whether the plaintiffs' election to proceed on their claim for equitable relief bars them from recovering damages at law; (3) whether the trial court's findings of no fraud with respect to the four remaining allegations of false and fraudulent representations are erroneous; and (4) whether an award of damages for negligent misrepresentation of the vending machine income and expenses is proper in this case.

1. DENIAL OF RESCISSION.

The trial court initially determined that the remedy elected by the plaintiffs—rescission—was not available. The court found that the plaintiffs, although placed on notice of each of the purported instances of fraudulent representations either prior to or within a month after the contract was signed by the parties, continued to deal with the property for more than seven months thereafter, thereby ratifying the contract and making it impossible to establish the *status quo ante* at the time the complaint was filed. The court, despite plaintiffs' notification of election and its determination that rescission was not available, permitted plaintiffs to present evidence of alleged fraudulent representations on the theory that relief at law was not precluded.

Plaintiffs on appeal argue in the alternative that they had not waived the right to rescind by their conduct with respect to the continued operation of the businesses involved in the transaction, or that the defendants waived their defense to plaintiffs' request for rescission by failing to affirmatively plead waiver, laches or estoppel in their answer. Plaintiffs apparently proceed from the erroneous premises that an absolute right to rescind exists. Indeed, the equitable remedy of "rescission is not a matter of right but rather one of grace, and lies largely within the court's discretion." (*Bechard v. Bolton* (1946), 316 Mich. 1, 5, 24 N.W.2d 422, 423.) On review this court will not disturb the determination of the trial court to grant or deny rescission absent a clear showing of abuse of discretion.

As a general rule, a court sitting in equity will not decree rescission of a contract where the parties cannot be placed in the *status quo ante*. (*Bielby v. Bielby* (1929), 333 Ill. 478, 487, 165 N.E. 231, 234; 12A C.J.S. *Cancellation of Instruments* sec. 53, at 727 (1980).) Failure of plaintiffs to demonstrate to the satisfaction of the court that the equitable remedy sought is appropriate under the circumstances may operate to defeat their claim in equity.

The statutory rule of pleading which requires a defendant to set forth affirmative defenses in his answer (Ill. Rev. Stat. 1977, ch. 110, par. 43(4)) does not deprive the trial court of power to deny rescission in the absence of such pleading where the facts and circumstances in a particular case render restoration of the *status quo ante* virtually impossible. Indeed, the written findings of the court in the instant case demonstrate that denial of rescission was based upon the inappropriateness of the remedy under the circumstances. The businesses at issue had been operated by the plaintiffs for seven months before the claim for rescission was advanced by them. During that period the plaintiffs had instituted significant changes in management and administrative policies. The court suggested that differences in the parties' approach to management and the disparity of their experience in operating the businesses involved in the transaction may have occasioned at least part of the losses complained of by plaintiffs. In addition, the contract for lease, as aforestated, extended only for a five-year period. Three of the five years had already elapsed by the time the trial was completed.

Considering the foregoing circumstances, we find that the trial court's denial of rescission for inability to restore the parties to the *status quo ante* was not an abuse of the broad discretionary powers of the court sitting in equity. Plaintiffs were properly relegated to seeking their relief at law.

2. ELECTION OF REMEDIES.

This brings us to the defendants' first issue on their cross-appeal,

namely, whether the plaintiffs' election to proceed on their claim for equitable relief bars them from recovering damages at law. By electing to pursue the equitable remedy, plaintiffs expressed a preference to repudiate the transactions and be restored to the *status quo ante.* Had the court determined that the plaintiffs had pursued their equitable remedy promptly and that restoration of the *status quo ante* was possible, then it is clear that an award of equitable relief would have precluded a further action seeking money damages to compensate plaintiffs for loss of the benefit of their bargain. Where, however, as here, the court determines that rescission is not available because the parties cannot be restored to the *status quo ante,* then the doctrine of election of remedies will not operate to deny the allegedly defrauded party an opportunity to maintain a suit at law for damages. 37 C.J.S. *Fraud* sec. 65 (1943).

In the instant case, the trial judge expressed his opinion early in the proceedings that the plaintiffs should be permitted to proceed under the tort damage count I even though plaintiffs' conduct with respect to the operation of the various businesses precluded rescission, the form of relief specifically elected by them. Defendants will not be heard to complain of prejudice resulting from any unreasonable surprise since the proof of fraud under count I was essentially the same (except for the element of damage) as that which plaintiffs were required to produce under count II. (*Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 48, 390 N.E.2d 393, 403 (hereinafter *Mother Earth.*).) Therefore, we find no error in the trial court's disposition of the election of remedies issue.

### 3. FINDINGS OF NO FRAUD.

We next consider plaintiffs' argument on appeal that the trial court committed reversible error in its finding of no intentional fraud as to each of the specific allegations contained in the complaint. We have reviewed the record thoroughly and conclude that the trial court's findings are not contrary to the manifest weight of the evidence. The elements of fraud are succinctly set forth in what must now be considered the seminal case for analyzing fraud in Illinois, namely *Mother Earth.* (See also *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286, 402 N.E.2d 599, 601.) Those elements need not be repeated here, and for the purpose of this opinion, we will address only the elements of fraud for which the trial court determined that insufficient proof had been adduced at trial.

*Greyhound*—The trial court found no reasonable or justifiable reliance on the part of the plaintiffs. For purposes of our analysis, the missing element is: " 'the person to whom the statement is made must believe and rely on it, and have a right to do so.' " *Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 48, 390 N.E.2d 393, 403 (quoting *Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 139, 213 N.E.2d 89, 91).

The testimony adduced at trial tended to show that during the period of the parties' negotiations, the plaintiffs learned that Greyhound buses made regular stops at the Deck and permitted passengers to deboard and enter the restaurant and use the vending machines. Prior to May 1, 1978, when the contract was signed, plaintiffs learned that the bus company was changing its route and would eliminate the Deck stop. In fact, the buses did discontinue their stops at the Deck in June, 1978.

■■■ Plaintiffs argue that, despite their actual knowledge that the buses would be eliminating their stops on the premises, plaintiffs were justified in relying on the defendant's financial reports of restaurant profits and could reasonably anticipate that their own profits would be substantially similar because the defendants had commented that the bus passengers were probably more of a nuisance than they were worth. In determining whether a party justifiably relies on another's representations, all of the circumstances surrounding the transactions, including the parties' relative knowledge of the facts available, opportunity to investigate the facts and prior business experience, will be taken into consideration. Only where the parties do not have equal knowledge, or access thereto, or where there are other peculiar circumstances inducing the injured party to rely solely on the representations of the other will a person be found to have justifiably relied upon the others' representations. (*Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 141, 213 N.E.2d 89, 92-93.) The plaintiffs herein were experienced business persons in restaurant operations. As aforestated, plaintiffs learned in advance of the date of contracting that the Greyhound bus passengers would cease their regular stops at the Deck restaurant. The defendants stood ready and willing to permit the plaintiffs to inspect their accounting books during the period of negotiations. There was ample opportunity for the plaintiffs to conduct their own investigation into what impact the change of bus routes could have on restaurant profits. Apparently they chose not to do so. On these facts we do not hesitate to affirm the finding by the trial judge that no actionable fraud could be found.

*Best Western*—The trial court found that defendants intended neither to deceive the plaintiffs nor to induce their reliance. The court further found that plaintiffs' reliance was not reasonable or justifiable. Because we find that the plaintiffs herein had no right to rely upon the alleged misrepresentation, we need not reach the scienter elements with respect to this issue.

During the period of the parties' negotiations, the motel operation was run under a franchise with Best Western. Terms of this franchise included periodic inspections of the motel premises, and continued membership in the franchise required that the motel meet certain standards in areas of cleanliness, good repair and safety. Under the defendants' man-

agement, the motel had passed these inspections; however, an inspection conducted within two weeks after the plaintiffs took possession resulted in a failing score. As a result, the plaintiffs' application for membership was denied. Although plaintiffs were offered an opportunity to upgrade the premises and reapply for franchise membership, they failed to do so and ultimately lost the benefits of the Best Western franchise, including the Best Western road sign, reservations system and certain discounts on supplies.

■ The plaintiffs contend that they were misled by the defendants' statement to the effect that there would be no problem transferring the franchise membership to them. In an arm's length transaction between experienced businessmen, we do not believe that the plaintiffs could justifiably rely upon this statement, without more. Plaintiffs' position on this issue is that the statement induced them to believe that the franchise membership would automatically continue for the period already paid for by the defendants and that, had they known otherwise, they might not have agreed to the transaction. In fact, plaintiffs had had prior experience with a Happy Joe's franchise. During the negotiations in the instant transaction plaintiffs were specifically told by defendants that the franchise did not go with the motel premises and that they would have to work out something directly with Best Western. The condition of the motel premises was not kept a secret from the plaintiffs, nor was the franchise agreement. On these facts, we agree with the trial court that plaintiffs could not have justifiably relied upon the defendants' casual statement in deciding whether or not to agree to the transfer. Accordingly, we affirm the trial court's disposition of the Best Western issue.

*Spread Expenses*—The trial court found no false statements, no intent to induce reliance, no intent to deceive, and no justifiable or reasonable reliance. The facts relative to this issue disclosed the following: The defendants were engaged in various other business enterprises located outside the Deck complex. A parent corporation was set up to coordinate the various businesses. For purposes of accounting defendants made a practice of lumping together certain common expenses incurred by the parent corporation. Without showing a breakdown of the precise nature of the expenses included in this item, they allocated a designated percentage of the total of these common expenses as a "spread expense" item on the monthly profit and loss statements for each of the various operations. When the financial statements were offered to the plaintiffs, the word "no" was written alongside the "spread" items. Plaintiffs contend that this indicated to them that they would not incur these particular expenses. The defendants, on the other hand, pointed out at trial that the "no's" indicated merely that the expenses had been allocated from the parent corporation's common expenses, and the figures shown on the

monthly statements would not necessarily represent what the plaintiffs could expect to incur after the transfer of the Deck operations. In any event, both parties employed accountants of good reputation well in advance of the signing of the contract on May 1, 1978. The statements of income and expenses which were provided by defendants' accountant to the plaintiffs' accountant for the fiscal years ending in 1976 and 1977, included the "spread expenses" allocable to the operations that plaintiffs were to assume under a column labeled "Other and Administration." The other columns provided income and expenses for each operation to be assumed by plaintiffs and a final column listing the total income and expenses for the defendants' entire multidivision corporation. The "Other and Administration" column was in fact applicable to the defendants' total multidivision corporation. The bottom line figures showed an $85,708.51 loss for 1976 and a $77,703.40 loss for 1977. Among the expenses listed under this heading, which did not appear under the headings for any of the specific operations to be taken over by plaintiffs, were the following for 1976 and 1977 respectively:

| | | | |
|---|---|---|---|
| (1) Company cars | $3,834.92 | and | $2,415.67 |
| (2) Contributions | 475.00 | and | 460.00 |
| (3) Travel and Entertainment | 1,557.26 | and | 913.95 |
| (4) Membership and Dues | 2,356.92 | and | 2,691.30 |
| (5) Legal and audit | 3,891.00 | and | 2,265.00 |
| (6) Officers' Wages | 29,162.00 | and | 32,168.12 |
| (7) Depreciation | 3,451.39 | and | 3,127.95 |
| (8) Employees Pension Fund | 13,576.00 | and | 13,390.00. |

If nothing else, it should have been readily apparent to the plaintiffs, and their accountant, that part of the legal and audit expenses listed under this heading were allocable to the operations to be assumed by them.

The statements of yearly expenses and income together with the individual profit and loss monthly statements showing "spread expenses" certainly were sufficient to give the plaintiffs fair notice that they could expect to incur some expenses in their own operation of the Deck businesses which the defendants could not specifically break down for them because of the percentage allocations applied by the defendants in accounting for their multidivision operations.

Plaintiffs' reliance on only the itemized income and expenses displayed on the 1976 and 1977 financial statements while totally disregarding the expenses listed under "Other and Administration" is simply not reasonable or justifiable under the circumstances. As such, we affirm the trial court's finding that no actionable fraud can be found with respect to the spread expenses issue.

*Vending Machines*—The trial court found no fraud, but instead determined that the defendants were liable for "negligent misrepresenta-

tion" and awarded damages in the amount of $11,725. On appeal plaintiffs take the position that the trial court erred in failing to find fraud, or, alternatively, that the award was grossly inadequate. The defendants, likewise, are dissatisfied with the trial court's judgment with respect to the vending machine issue. In their cross-appeal, defendants argue in the alternative that there is no basis for awarding monetary relief as an equitable remedy for negligent misrepresentation in the absence of fraud, or that plaintiffs are precluded from recovering on a theory of negligent misrepresentation because their complaint alleged tort liability only on a theory of intentional fraud.

The starting point for analysis of the issue is the determination of whether the trial court erred in its finding that there was no fraud. The evidence at trial revealed that the defendants in fact owned, in addition to the 12 vending machines located on the portions of the Deck premises leased by the plaintiffs, several additional machines which were located in other business properties. Approximately six machines were at the Deck automotive service station which was not involved in the instant transaction, and seven others were totally unassociated with the Deck complex. It is unclear whether the total number of machines owned by the defendants was ever revealed to the plaintiffs during the negotiation period. The defendants stated at trial that *all* of their vending machines were being offered to the plaintiffs. The plaintiffs stated that they were aware that the defendants had machines in their business properties off of the Deck complex premises, but understood throughout the negotiation period that they were being offered only those located at the Deck businesses that they would be assuming. The defendants had explained to the plaintiffs that they could either rent or purchase the machines as they saw fit.

Approximately one month prior to the signing of the contract involved herein the defendants forwarded to plaintiffs their 1976 and 1977 financial statements which included the income and expenses from all 25 of the defendants' vending machines under the general heading "Deck Gift and Vending." The statements did not, however, display the number of machines. A few days before the May 1 closing date, the plaintiffs told defendants that they wanted to buy 11 of the 12 machines located on the business premises involved in the instant transaction. When the plaintiffs made their decision to purchas 11 machines, they did not request further financial information, and defendants did not point out to the plaintiffs that the figures provided on the earlier statements reflected a greater number of machines than ultimately selected for purchase by them. Based on the facts and circumstances presented, the trial court concluded that the plaintiffs had failed to prove an intentional misrepresentation. We affirm this finding.

■■ ■ The focal point in distinguishing between intentional fraud and negligent misrepresentation is intent or "scienter." The element of intent for intentional fraud involves "intent to deceive, to mislead, or to convey a false impression." (Prosser, Torts sec. 107, at 700 (4th ed. 1971).) Proof that the maker of the statement knows or believes it to be untrue will suffice to establish a prima facie case of fraud on this element. (*Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 50, 390 N.E.2d 393, 404.) On the other hand, a representation which the maker believes to be true but because of negligent expression is in fact false is a negligent rather than fraudulent misrepresentation. (Restatement (Second) of Torts §528 (1977).) The evidence in the instant case was conflicting. Generally, where evidence at trial is conflicting, the issue becomes one of witness credibility. Because of the trial court's superior position for determining witness credibility issues, this court will not disturb the findings of the trial court unless it is clearly demonstrated that its findings are contrary to the manifest weight of the evidence. Our review of the record in the instant case convinces us that the trial court's finding of no intentional fraud was not manifestly erroneous. Accordingly, we affirm the trial court to the extent that, at most, defendants were guilty of negligence in failing to indicate that the figures provided on their financial statements included machines located on business properties that were not directly involved in the instant transaction.

### 4. AWARD OF DAMAGES

We must next determine whether an award of damages was proper. We readily agree with the defendants that the monetary award was not proper as an incidence of plaintiffs' claim for rescission. The trial court's order makes it abundantly clear that the award was based on plaintiffs' claim for relief at law, not in equity. Having previously concluded that the trial court could properly entertain plaintiffs' claim for damages at law under count I, notwithstanding their election to proceed under count II in equity, we must determine whether an award based on a finding of negligence was appropriate in this case.

Illinois law clearly recognizes that the tort of negligent misrepresentation is actionable if the complaint alleges the necessary elements of negligence. (*Duhl v. Nash Realty Inc.* (1981), 102 Ill. App. 3d 483, 493, 429 N.E.2d 1267, 1275.) Defendants herein, however, correctly state that plaintiffs' complaint in count I sounds in intentional tort, not negligence.

As a general rule, a party will not be allowed to try a case upon one theory and recover on another. (*Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 138, 213 N.E.2d 89, 91.) We are, however, aware of the liberal rules allowing for amendment of pleadings to conform with proof, and that such amendment may be made in the reviewing court on its own motion. (*Pinelli v. Alpine Development Corp.* (1979), 70 Ill. App. 3d 980, 388

N.E.2d 943; *Simonson v. Simonson* (1970), 128 Ill. App. 2d 39, 262 N.E.2d 326; Ill. Rev. Stat. 1977, ch. 110A, pars. 362(f) and 366(a)(1).) The general rule permitting amendment of pleadings to conform with proofs requires a determination that allowance of the amendment would not prejudice the defendant in view of the character of his defense in the trial court. *Simonson v. Simonson* (1970), 128 Ill. App. 2d 39, 48, 262 N.E.2d 326, 331.

Plaintiffs herein have not alleged a duty of care owed to them which was breached by the defendants. While failure to plead duty and breach of duty in this case—involving as it does the sale and lease of business property—would not have been fatal to plaintiffs' recovery, we nonetheless believe that exercise of our authority to *sua sponte* amend the complaint to state a claim for negligent misrepresentation would prejudice defendants herein.

Defendants on appeal argue that plaintiffs were contributorily negligent in failing to ascertain what effect their selection of the 11 machines would have on their anticipated profits. Plaintiffs' contributory negligence, if found, would have barred recovery in a negligence cause of action. To the contrary, allegations of plaintiffs' contributory negligence would not have constituted a defense to fraud.

Plaintiffs neither pleaded nor proved at trial that they were free of contributory negligence. The defendants did not present affirmative evidence of plaintiffs' contributory negligence. We cannot determine from the record that in fact the plaintiffs were not contributorily negligent in failing to ascertain what effect, if any, their ultimate decision to purchase 11 vending machines would have had on their use of the financial statements to project their own anticipated profits. To amend the pleadings at this stage would have the effect of denying defendants an opportunity to present evidence of a defense that was otherwise inapplicable considering the state of the pleadings in the trial court. Furthermore, plaintiffs have never requested an amendment to conform the pleadings to the proof. Exercise of our power to amend on our own motion would, in our opinion, constitute an abuse of discretion in this case.

■■ In sum, we conclude that the trial court erred in awarding damages for negligent misrepresentation, a theory never pleaded by plaintiffs and against which the defendant had no opportunity to defend. Having found no basis for recovery on fraud, the complaint provided no basis for plaintiff's recovery.

For the foregoing reasons, the judgment of the trial court awarding damages for negligent misrepresentation is reversed. In all other respects the order and judgment appealed from is affirmed.

Affirmed in part, reversed in part.

STOUDER and ALLOY, JJ., concur.