A/S APOTHEKERNES LABORATORI-
UM FOR SPECIALPRAEPARATER,
Plaintiff-Appellant,

v.

I.M.C. CHEMICAL GROUP, INC., and
Dr. M.B. Gillis, Defendants-Appellees.

No. 83–1186.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 10, 1983.

Decided Jan. 23, 1984.

Robert E. Shapiro, Kirkland & Ellis, Chi-
cago, Ill., for plaintiff-appellant.

John J. Arado, Wildman, Harrold, Allen
& Dixon, Chicago, Ill., for defendants-appel-
lees.

Before ESCHBACH, POSNER and
FLAUM, Circuit Judges.

POSNER, Circuit Judge.

This diversity suit grows out of
unsuccessful negotiations between the
plaintiff, a Norwegian company we shall
call Apothekernes for short, and the defend-
ants, an American company called IMC
Chemical Group and its president, Dr. Gillis,
for the sale by IMC to Apothekernes of
IMC's Biochemicals Division. The district
court granted summary judgment for IMC
on three of the five counts in the complaint
and certified its dismissal of those counts
for an immediate appeal under Rule 54(b)
of the Federal Rules of Civil Procedure.
Although the defendants have not contest-
ed our appellate jurisdiction, we have, of
course, an independent obligation to make
sure we do not exceed it. Rule 54(b) allows
a district judge to certify for immediate
appeal a judgment that does not dispose of
the entire lawsuit before him if "more than
one claim for relief is presented," but we
must decide whether the dismissed and the

retained counts are separate claims or only one claim.

After prolonged negotiations Apothekernes and IMC signed in December 1977 a letter of intent that set forth in considerable detail "the terms upon which we . . . intend to negotiate and consummate an Agreement of Sale" for the Biochemicals Division's assets but that stated in the concluding paragraph, "All of the above is subject to our concluding an Agreement of Sale which shall be acceptable to the Boards of Directors of our respective corporations, whose discretion shall in no way be limited by this letter . . . ." Negotiations continued over several issues that had not been resolved in the letter of intent and by February 23 only three remained. IMC refused to budge on any of these issues. The next day (according to Apothekernes) Apothekernes' president met with Gillis and accepted IMC's terms. Three days later, however, the president of IMC's parent corporation told Gillis that the deal was a "no go," whereupon Gillis got the members of IMC's board of directors to sign a "Unanimous Written Consent of Directors in Lieu of Meeting"—dated the same day (February 27)—rejecting the terms set forth in the letter of intent. Counts I and II of the complaint allege that IMC broke its contract to sell the Biochemicals Division to Apothekernes (Count I seeks specific performance, Count II damages); Count III that the defendants are "estopped from refusing to pay to plaintiff any and all damages suffered by plaintiff as a result of" the defendants' "representations, promises and agreements . . . to sell the Assets and Business to plaintiff . . ."; and Counts IV and V that the defendants, either intentionally or recklessly, "fraudulently misrepresented" that IMC intended to sell Apothekernes the Biochemicals Division.

If Counts I and II had alleged that the letter of intent was the complete contract between the parties that the defendants had broken, and if the district judge had dismissed just those two counts, it might be possible to view the retained counts as setting forth a separate claim from the dismissed counts. The contract claim of Counts I and II would then rest on a single document while the claims in the remaining counts, claims sounding in estoppel and misrepresentation, would rest on statements made and intentions conceived by the defendants apart from the document itself. Although all the claims would have arisen from a common factual setting—the negotiations—there might be enough factual differences between the documentary contract claim on the one hand and the estoppel and fraud claims on the other to allow the district judge to enter an appealable judgment on the contract claim alone. See *Minority Police Officers Ass'n v. City of South Bend,* 721 F.2d 197 (7th Cir.1983).

However, the contract claim does not rest on just the letter of intent; nor did the district court enter judgment on that claim alone. Concerned that the "whose discretion shall in no way be limited by this letter" clause in the letter of intent would prevent a reasonable trier of fact from construing the letter as a contract, Apothekernes has been careful not to rest its contract claim on so narrow a base. Rather, as explained in its opening brief in this court, its claim is "that the parties intended to be bound when they reached a full 'meeting of the minds' on February 24, 1978." This is the date not of the letter of intent but of the last meeting between the presidents of the two companies. And the evidence that Apothekernes relies on to show that a contract was made on that date includes statements during the negotiations up to and including February 27, when they were broken off—includes, in Apothekernes' words, "IMC's repeated statement that it intended to dispose of the Terre Haute assets, a long history of tough negotiations leading to a Letter Agreement setting out the basic elements of the sale, an ultimate 'meeting of the minds' on all outstanding terms of the sale contract, and an ill-disguised effort [the "Unanimous Consent" signed by IMC's board] by IMC to find some way out of what it recognized was a completed deal." Apothekernes also has an alternative theory of breach of contract: that the letter of intent imposed on IMC a duty, which it

breached, to negotiate with Apothekernes in good faith for the sale of the Biochemicals Division. The entire course of negotiations is relevant to determining whether IMC acted in bad faith. Finally, the premise of the estoppel count, Count III, which the district court also dismissed, is that the defendants by their statements and other conduct led Apothekernes to believe that it had a firm deal to purchase the Biochemicals Division.

As a result of the breadth of Counts I–III it is hard to identify a single fact that would be relevant to IV and V (the fraud counts, which were retained), but not to I–III, the dismissed counts. The fraud counts allege that the defendants made representations that induced Apothekernes to believe that the defendants wanted to sell IMC's Biochemicals Division to it and that these representations were false because the defendants never intended to make the sale. The representations themselves are relevant, indeed central, to all three of the dismissed counts; they are essential evidence of the alleged meeting of minds (the basis of Counts I and II) that was consummated on February 24 and the very foundation of the estoppel Count III. And the alleged falsity of the representations is an essential part of the evidence that the defendants broke their agreement to negotiate in good faith, an aspect of Counts I and II. The district judge declined to dismiss the fraud counts only because he thought that, "Construing the disputed facts in a light most favorable to plaintiff, a trier of fact may find that ... during the time Gillis allegedly knew that the proposal had been rejected by the board his words and/or conduct represented that negotiations were still feasible." As Apothekernes points out in its brief, "There is, however, no reason the same evidence cannot be probative on the good faith issue as well," an issue raised by the alternative theory underlying Counts I and II. We doubt that there are any facts pertaining to the contract and estoppel counts that are not pertinent to the fraud counts as well—and we are sure there are no facts pertaining to the fraud counts that

are not also pertinent to the contract and estoppel counts.

■ This conclusion will not surprise anyone who has followed the evolution of the common law of contracts. Traditional contract law, with its many formal requirements such as that of consideration, seemed too confining, so a doctrine of promissory estoppel was added to the law, which permits a party to be held to his promise in some circumstances even if it was not supported by consideration. But the remedies of contract law still seemed too confining (for example, punitive damages were unobtainable in a contract action); so the law strained to find tortious misconduct in contract settings. The doctrine of equitable estoppel, a tort doctrine (see Prosser, Handbook of the Law of Torts 691–92 (4th ed. 1971)) but one very similar to promissory estoppel, see *R.S. Bennett & Co. v. Economy Mechanical Industries, Inc.,* 606 F.2d 182, 187 n. 5 (7th Cir.1979); *Dale v. Groebe & Co.,* 103 Ill.App.3d 649, 653–54, 59 Ill.Dec. 350, 354, 431 N.E.2d 1107, 1111 (1981), was invented, even though the tort doctrine of deceit (fraud), cf. *Soules v. General Motors Corp.,* 79 Ill.2d 282, 286, 37 Ill.Dec. 597, 599, 402 N.E.2d 599, 601 (1980), which itself had expanded to reach negligent misrepresentations, see, e.g., *Luciani v. Bestor,* 106 Ill. App.3d 878, 888, 62 Ill.Dec. 501, 502, 436 N.E.2d 251, 259 (1982), covered much the same ground ("the gravamen of equitable estoppel is a material misrepresentation of past or present circumstances," *R.S. Bennett & Co. v. Economy Mechanical Industries, Inc., supra,* 606 F.2d at 187) and therefore itself overlapped the contract doctrine of promissory estoppel. The district judge could not figure out whether Count III alleged promissory estoppel, equitable estoppel, or both; nor can we.

■ As a result of this doctrinal profusion it is possible for a plaintiff to cast the same facts as a breach of contract and as a tort, and Apothekernes did so. But that brings the case within the principle that "mere variations of legal theory" will not allow an appeal under Rule 54(b) from an order rejecting one or more of the varia-

tions. *Local P–171, Amalgamated Meat Cutters v. Thompson Farms Co.,* 642 F.2d 1065, 1071 (7th Cir.1981). The practical reason behind this principle is well illustrated by this case. If we heard this appeal on the merits, and later one of the parties appealed from a judgment entered after trial on the fraud counts, we would have to relearn all of the facts that had been before us on this appeal. The plaintiff merely gave different legal characterizations to the same facts, and the district judge dismissed most of those theories while retaining one for trial. In doing this he sliced the bread awfully thin: if there is a genuine issue of material fact concerning fraudulent misrepresentation, it is hard to see why there is not also a genuine issue of material fact concerning estoppel and breach of contract. But we cannot reach the question whether the district judge erred in granting partial summary judgment, for whether he acted consistently or inconsistently, correctly or incorrectly, he did not resolve claims that were separate in a Rule 54(b) sense from the claims he retained. Cf. *Cott Beverage Corp. v. Canada Dry Ginger Ale Inc.,* 243 F.2d 795, 796 (2d Cir.1957) (per curiam). We therefore lack jurisdiction of the appeal, a conclusion also supported by several cases in other circuits: *Public Leasing Corp. v. Mack Trucks, Inc.,* 16 Fed.R.Serv.2d 472 (10th Cir.1972) (per curiam); *Edney v. Fidelity & Guaranty Life Ins. Co.,* 348 F.2d 136 (8th Cir.1965) (per curiam); *Backus Plywood Corp. v. Commercial Decal, Inc.,* 317 F.2d 339, 341 (2d Cir.1963); cf. *McIntyre v. First Nat'l Bank,* 585 F.2d 190, 192 (6th Cir.1978) (per curiam).

The appeal is dismissed. No costs in this court.