Joseph **KREJCI III,** Plaintiff-Appellant,

v.

**U.S. ARMY MATERIAL DEVELOP-
MENT READINESS COMMAND,**
et al., Defendants-Appellees.

No. 83–1458.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 5, 1984.
Decided May 11, 1984.

Sheldon Bart Nagelberg, Chicago, Ill., for plaintiff-appellant.

Thomas P. Walsh, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for defendants-appellees.

Before ESCHBACH, POSNER and COFFEY, Circuit Judges.

POSNER, Circuit Judge.

The district court dismissed Mr. Krejci's tort action against the government for failure to state a claim, and he has appealed. The only question is whether his claim is excluded from the scope of the Federal Tort Claims Act as a "claim arising out of ... misrepresentation." 28 U.S.C. § 2680(h). According to the allegations of the complaint, which for purposes of this appeal we must assume are true, Krejci, who in 1977 was working for the U.S. Postal Service in Chicago, was "recruited" in April of that year by the U.S. Army Material and Readiness Command to go to work at its arsenal in Rock Island, Illinois. He was assured that the transfer would involve "little or no loss in pay"; that even though the new position carried a salary of only $9,303 he would be able to retain his postal salary of $13,970 because he was transferring from one government agency to another. After receiving additional assurances, both orally and in writing, that he would be paid his old salary in his new job, Krejci moved to Rock Island on June 5. For the next 22 months he was paid at this rate, and in reliance on it he bought a house and incurred other expenses appropriate to his salary. Then on April 9, 1979, his salary was cut by $3,472 a year, and he was told to repay the excess that he had received (the government later withdrew this demand). The sudden cut in salary caused him to default on his mortgage and other debts, resulting in losses that he seeks to recover by this suit, along with damages for mental suffering.

The suit claims that the government was negligent in failing to discover its mistake sooner. On July 25, 1977, shortly after Krejci began work in Rock Island, the personnel chief of the Rock Island Arsenal wrote army headquarters in Washington to inquire whether Krejci was entitled to a $13,970 annual salary. In a response sent nine months later, on April 17, 1978, headquarters told the Rock Island Arsenal's personnel chief that Krejci was not entitled to retain his old salary, because the postal service is not an executive agency within the meaning of the salary-retention law. The complaint is not clear on what happened between April 1978 and the actual reduction in salary effected the following April; but Krejci claims that the delay in

straightening out the error contributed to the damages that he incurred as a result of conducting his financial affairs in the belief that he was earning $14,000 a year rather than $9,000.

■ The Federal Tort Claims Act subjects the United States to liability for the torts of its employees in accordance with the law of the state where the alleged tort occurred, 28 U.S.C. § 1346(b), subject to various exceptions such as that for misrepresentation. Even if there were no tort of negligent misrepresentation, this particular exception could be a source of problems. A number of traditional torts, correctly assumed to be within the scope of the government's waiver of sovereign immunity in the Tort Claims Act, involve either misrepresentation or, what is analytically very similar, a misleading failure to disclose true facts. An example of misrepresentation is where a truck driver, whose truck is blocking the view of the cars following him, carelessly signals those cars to pass him and a passing car collides with a car coming from the opposite direction. Cf. *Pitre v. State Farm Mutual Ins. Co.*, 154 So.2d 772 (La.App.), app. dismissed, 244 La. 1028, 156 So.2d 229 (1963). The truck driver's signal misrepresents the condition of the road ahead; yet if he were a government truck driver, the government would be liable for the accident. Cf. *Johnson v. State*, 69 Cal.2d 782, 799–800, 73 Cal.Rptr. 240, 252–53, 447 P.2d 352, 364–65 (1968). Culpable failure to disclose material facts is illustrated by a landowner's failure to warn a business invitee of a nonobvious dangerous condition on the land; if the invitee is injured, the owner is liable. See, e.g., *Straight v. B.F. Goodrich Co.*, 354 Pa. 391, 394, 47 A.2d 605, 607 (1946). The tort is negligence, not misrepresentation, cf. *Davis v. United States*, 716 F.2d 418, 423–27 (7th Cir.1983), yet the breach of duty that makes the owner negligent is the breach of a duty to disclose a material fact. Products liability cases where the manufacturer is charged with having failed to warn of a nonobvious danger associated with the use of his product are analyzed similarly. See,

e.g., *Gracyalny v. Westinghouse Elec. Corp.*, 723 F.2d 1311, 1317 (7th Cir.1983).

■ Then there is the case where someone having no duty to warn of a dangerous condition nevertheless undertakes to warn of it. If he withdraws the warning without notice, and someone who has been lulled into a false sense of security is injured as a result, the tort is negligence, not misrepresentation, see, e.g., *Erie R. Co. v. Stewart*, 40 F.2d 855, 857 (6th Cir.1930), even though the injury would not have occurred but for the implied representation that a warning would be given if there was danger. As the Supreme Court explained in *Indian Towing Co. v. United States*, 350 U.S. 61, 69, 76 S.Ct. 122, 126, 127, 100 L.Ed. 48 (1955), "The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Tort Claims Act." Although the Court did not discuss the Act's exception for misrepresentation, subsequent decisions make clear that the case was not within it. See, e.g., *Ingham v. Eastern Air Lines, Inc.*, 373 F.2d 227, 239 (2d Cir.1967). The overlap between negligence and misrepresentation is also illustrated by *Ramirez v. United States*, 567 F.2d 854 (9th Cir.1977) (en banc), which held that the failure of a government doctor to advise a patient of the risks of a surgical procedure was actionable under the Tort Claims Act.

■ As these examples demonstrate, the exception for misrepresentation in 28 U.S.C. § 2680(h) is not intended to encompass all tortious conduct whereby the tortfeasor induces a misapprehension in the victim. Congress's purpose seems to have

been to exclude the common law tort of deceit plus closely related forms of liability encompassed by the term "misrepresentation." Both "deceit" and "misrepresentation" appear in the long string of excepted torts in section 2680(h)—"assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights"; there has been since 1974 a partial exception to the exception, for torts by law enforcement officers, but it is not material to this case. Deceit at common law was and is, essentially, fraud—the deliberate effort to obtain something of value by deceiving another. See, e.g., *Soules v. General Motors Corp.,* 79 Ill.2d 282, 286, 37 Ill.Dec. 597, 599, 402 N.E.2d 599, 601 (1980); *Glovatorium, Inc. v. NCR Corp.,* 684 F.2d 658, 660 (9th Cir. 1982); see generally Prosser, Handbook of the Law of Torts 685–86, 694–99 (4th ed. 1971). This is quite different from accidentally misleading someone to his detriment, as in the examples we put earlier.

■ But with the emergence of a tort of negligent misrepresentation, the line between actionable and nonactionable misrepresentations blurred, even though the Supreme Court held in *United States v. Neustadt,* 366 U.S. 696, 702–08, 81 S.Ct. 1294, 1298–01, 6 L.Ed.2d 614 (1961), that liability for negligent misrepresentation was excluded by section 2680(h). The line can be preserved by bearing in mind the origins of the new tort of negligent misrepresentation in the old one of deceit. See *Trimble v. Ward,* 97 Ky. 748, 31 S.W. 864 (1895); *Watson v. Jones,* 41 Fla. 241, 249–55, 25 So. 678, 681–83 (1899); *Whitehurst v. Life Ins. Co.,* 149 N.C. 273, 62 S.E. 1067 (1908); Williston, *Liability for Honest Misrepresentation,* 24 Harv.L.Rev. 415, 436–37 (1911); Bohlen, *Misrepresentation as Deceit, Negligence, or Warranty,* 42 Harv.L. Rev. 733 (1929). There must still be a deliberate effort to get something of value by a representation that is false, only the person making the representation need not know that it is false. See, e.g., *Luciani v. Bestor,* 106 Ill.App.3d 878, 888, 62 Ill.Dec. 501, 509, 436 N.E.2d 251, 259 (1982); Pros-

ser, *supra,* at 706–07. That describes the government's alleged misconduct in this case. The people at the Army Readiness Command wanted Mr. Krejci to come work for them, and knowing that salary was important to him they represented that he would not lose any salary if he did. If they had known that this representation was false, they would have been guilty of deceit. Since they did not know it was false, but (always accepting the allegations of the complaint) should have known, they were guilty of negligent misrepresentation. Either way, the government is not liable. See *Bander v. United States,* 161 Ct.Cl. 475, 487–88 (1963) (opinion of Commissioner of the Court of Claims, adopted by the court per curiam), a factually similar case to this, rejecting liability.

This approach resembles another test used by this circuit (and others) for distinguishing the nonactionable from the actionable misrepresentation: whether the misrepresentation is commercial or financial in nature rather than related to personal safety. See, e.g., *Preston v. United States,* 596 F.2d 232, 238 (7th Cir.1979); *Redmond v. United States,* 518 F.2d 811, 816 (7th Cir.1975); *Green v. United States,* 629 F.2d 581, 585 (9th Cir.1980). The test is not altogether easy to apply; since the government is not a business, it is hard to divide its activities into commercial and noncommercial. And in an era of "mass disaster" torts, it is no longer easy to argue that the line between commercial and noncommercial serves to shield the United States from massive liabilities, a presumed purpose of section 2680(h). In any event, the test is closely related to the one we have suggested. A financial misrepresentation is more likely to involve the hope of gain than a misrepresentation relating to safety. The former is intended to operate as an inducement; the latter does so only incidentally. When the Coast Guard fails to repair the light in a lighthouse and an accident results, there is no gain to the Coast Guard (beyond the saving in the cost of repair); the misrepresentation was not motivated by hope of gain. Stated other-

wise, it was not "commercial" in character, and liability is allowed. But if the army was guilty of misrepresentation here, the motivation was a commercial one—to get Krejci to work at the Rock Island Arsenal. In *Ramirez*, where the doctor failed to disclose to the patient the risks of a surgical procedure, it is hardly likely that he did this to assure himself a fee. The difference between deceit and negligent misrepresentation lies not in the motivation for the representation (or omission); the motivation is the same, and it is to gain some advantage. The difference, which is immaterial to the government's liability, lies in whether the person making the misrepresentation knows it is false.

■ Krejci wants us to focus on the army's negligence in failing to discover that he was being overpaid. He is trying of course to downplay the element of misrepresentation. But he was not hurt by the fact that for two years the government paid him more than he was entitled to; on the contrary, he was benefited, especially since the government has dropped its demand that he repay any of the excess. He was hurt only by the government's failure to tell him that he was not entitled to the salary he was getting. That failure was a continuing misrepresentation between the time when he was first assured that there would be no salary reduction and the time when the army finally told him that his salary would be reduced. If the army had known all along that he was not entitled to his old salary, but didn't tell him because they wanted him to keep working at the Rock Island Arsenal and hoped eventually to be able to get the extra salary back from him, this would be a clear case of deceit, and would not be actionable under the Tort Claims Act. The only thing that blurs the picture is that the government was not deliberately keeping him in the dark. But that is just to say that its misrepresentation was negligent, and negligent misrepresentation is no more actionable under the Tort Claims Act than deceit, or deliberate misrepresentation, itself.

*Block v. Neal,* 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983), on which Krejci principally relies, is a much different case from this. The buyer of a house that had been financed by the Farmers Home Administration complained that the Administration had both negligently supervised the construction of the house and negligently inspected it prior to her taking possession. The Supreme Court held that this claim was not barred by the misrepresentation exception in the Tort Claims Act even though her companion claim that she had bought the house in reliance on the representations in the Administration's inspection reports was barred. The negligent supervision and inspection would have injured the buyer even if she had never seen a report. The government's failure to discover the defects in the house was akin to a manufacturer's failure to discover a defect in a component of his product, a conventional case for tort liability having nothing to do with misrepresentation. But the government's failure to discover that it was overpaying Mr. Krejci injured him only because the government had represented that he was entitled to the higher salary, for it was that representation which induced him to go out and get a mortgage and run up other debts, leading to the losses that he seeks to recover by this suit. This action was correctly dismissed.

AFFIRMED.