(No. 15323.—Order affirmed.)

E. P. MOELLER *vs.* PETER MILLER *et al.*—(SAMUEL MAYER HAIMOWITZ, Appellant, *vs.* EMMA MILLER, Appellee.)

*Opinion filed February 17, 1925.*

1. JUDICIAL SALES—*it is good practice for the court to require confirmation of sale.* While not required by statute, it is good practice for the court, in a foreclosure decree, to require confirmation of the sale before a deed is issued; but even in the absence of such requirement in the decree it is the duty of the court, on complaint made, to set aside the sale for fraud or gross irregularity.

2. SAME—*provision of decree requiring confirmation of sale is mandatory.* A provision in a foreclosure decree expressly requiring that the sale be confirmed by the court is mandatory upon the officers making the sale and binding upon the parties, and the sale is not consummated until it is confirmed.

3. SAME—*chancellor has a broad discretion in approving or disapproving sale.* The chancellor has a broad discretion in approving or disapproving a sale made by the master in chancery where there is no right of redemption, and where the deed, by the terms of the decree, is not to be made until the sale is confirmed.

4. SAME—*general rule as to confirming sale to stranger.* Where a sale has been conducted in accordance with the order of the court and the purchaser is a stranger to the record, mere inadequacy of price will not justify a refusal to confirm the sale unless the inadequacy is so gross as to amount to fraud and there is no right of redemption from the sale.

5. SAME—*when the amount bid at a sale is so inadequate as to amount to fraud.* A bid of $575 for property which the record shows will, on a guaranty by another proposed purchaser, sell for

at least $6000 if again offered for sale, is so grossly inadequate as to amount to fraud, and where no right of redemption exists, and the sale was made subject to approval, refusal to confirm the sale is proper.

6. SAME—*court may consider circumstances showing unfairness in connection with inadequate bid.* If, in addition to inadequacy of the price paid at a judicial sale, there be any appearance of unfairness, or any circumstance connected with the sale of a character tending to cause such inadequacy, the court may consider such matters and set the sale aside.

7. SAME—*defendant may rely upon promise of complainant's attorney to give her notice of foreclosure sale.* The defendant to a foreclosure proceeding has a right to rely upon the promise of the complainant's solicitor to give her notice of the time and place of the sale, and a failure of the attorney to give such notice, even without any intentional misconduct on his part, is, in connection with gross inadequacy of price, ground for the action of the court in refusing to confirm the sale.

APPEAL from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding.

JOHN W. ELLIS, for appellant.

BEACH & BEACH, for appellee.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

E. P. Moeller filed his bill in the circuit court of Cook county against Peter Miller, as trustee, Emma Miller, Hubbard Miller, Walter Froehlich and John Almdale, to foreclose a second trust deed executed by Laura Moeller, a widow, in favor of Peter Miller as trustee, on certain premises therein described located in Cook county, given to secure a note for $300, due one year after date and bearing interest at six per cent. Appellee, Emma Miller, was the owner of the equity in the premises at the time the bill was filed. The bill alleged that there was a prior incumbrance on the premises of $2000 which was past due. Appellee

answered the bill and upon a hearing a decree of foreclosure was entered, with a finding that default in payment of the indebtedness had been made and that the amount of $470.85 was due. The decree provided that the lien was subject to the prior lien for $2000. A master in chancery was ordered to issue to the complainant a certificate of indebtedness in the amount found due, and if the amount of the certificate was not paid within fifteen months that the premises be sold to satisfy the indebtedness. The decree provided that the sale be held at the Chicago Real Estate Board rooms, and that the master give notice of the time, place and terms of the sale by publishing such notice at least once each week for three weeks in a secular newspaper of general circulation at least twenty days before the date of sale. The decree also provided that the master report the sale, and upon confirmation of the same by the court that a deed be delivered to the purchaser. No redemption was made within the fifteen months' period, and the master in chancery who had issued the certificate of indebtedness was appointed by the court as a special commissioner to conduct the sale, his commission as master in chancery having expired. The time, place and terms of the sale were advertised as provided by the decree. At the time and place so designated the special commissioner appeared and offered the premises for sale. The complainant bid the amount of the debt and costs, and appellant, Samuel Mayer Haimowitz, then bid the sum of $575, and being the best bidder was pronounced the purchaser. Neither appellee nor her attorney attended the sale. The special commissioner made his report to the court that Haimowitz had paid to him the amount of his bid, $575, and that such amount was sufficient to pay the certificate of indebtedness issued to complainant and the commissioner's fees and expenses and that there remained a balance of $2.34, and that upon the approval of his report of sale by the court he was prepared to deliver a deed to the purchaser.

The appellee, Emma Miller, filed the following objections to the report of sale, verified by her affidavit: (1) That the premises constitute her entire and sole estate; (2) that she is now living separate and apart from her husband, who many years ago deserted her and for many years has contributed nothing to her support, and she has no means of support or income except from the renting of two small flats in the premises; (3) that the premises are fairly and reasonably worth in the open market, and were so worth when sold by the commissioner, the sum of $9000, and that they were sold by the commissioner for not more than one-eighth of the fair cash market value of the premises, and if the sale be confirmed she will be left penniless and without means of support; (4) that several weeks prior to the sale of the premises, in order to arrange to protect her rights and interest in the premises at the time of sale, she called upon one of complainant's solicitors and stated to him that she desired to make arrangements at the time of the proposed sale to raise the money to purchase the premises or to have friends purchase the same for her, and asked him to notify her when sale would take place; that he stated to her that he would do so and afford her ample time in which to arrange to pay the judgment or purchase the premises; that she failed to receive any notice whatever, either from him or from any other source, of the time and place of sale, and that as a result made no arrangements to protect her rights, or to secure a purchaser, or to obtain money to pay the judgment, or to purchase the premises, and by the sale was thus deprived of her equity in the premises; (5) that if the report of sale be not approved and the premises be again offered for sale the re-sale would bring at least $6000, and that she has a purchaser ready, able and willing to pay $6000 cash for the premises, and submits a written offer by such proposed purchaser, who is financially responsible; that she presents to the court a certified check for $1500 signed by the proposed

purchaser as a guaranty that he will bid $6000 if the premises be again offered for sale. She therefore prayed that the report be not approved and that the premises be re-offered for sale. Samuel Mayer Haimowitz, the highest bidder at the sale, thereupon filed his petition to be made a party of record in the cause, and in his petition prayed that the report of sale of the special commissioner be approved and the commissioner ordered to make to him a deed to the premises.

The record contains a letter signed by A. B. Galbraith, the proposed purchaser, addressed to the attorneys for appellee, in which he states that in case the report of sale be not confirmed by the court and the premises be again offered for sale, "I offer and guarantee that at such sale I will bid for the premises $6000, and as a guarantee that I will so bid I attach and enclose certified check for $1500 to my order and by me endorsed to the order of said special commissioner." The check so drawn and endorsed, dated December 7, 1922, and directed to the Northern Trust Company, accompanied the letter.

Upon a hearing upon the report of sale the court disapproved the report of sale and ordered the premises re-sold after duly advertising the same as required in the former decree for sale. Haimowitz excepted and has perfected this appeal.

Although there is no statutory provision requiring the confirmation of a sale by the court and such confirmation is not necessary, yet it is a good and safe practice for the court to make such requirement in its decree of sale. (*Miller* v. *McMannis,* 104 Ill. 421.) Even in the absence of any such provision in the decree it would be the duty of the court, on proper complaint made, to set aside the sale for fraud or any gross irregularity in the sale, as the owner of the equity is entitled to have the sale conducted according to law and free from fraud whereby he might be deprived of valuable rights. The circuit court in this case by

its decree of sale expressly ordered that the sale be reported to the court and that upon confirmation by it a deed be delivered to the purchaser. This decree was the authority for the sale and its provisions were mandatory upon the officers conducting the sale. Its provisions were followed by the special commissioner, and the sale was not consummated until confirmed by the court. All the parties were bound by the decree of the court ordering the sale, and the order of the court determined the character and manner of the sale.

The chancellor has a broad discretion in the matter of approving or disapproving a sale made by the master in chancery where there is no right of redemption from the sale and where the deed is by the terms of the sale not to be made by the master to the purchaser until after confirmation of the sale by the court. Where the sale has been conducted in accordance with the order of the court and the purchaser is a stranger to the order of sale, as in this case, mere inadequacy of price will not justify a court in not confirming the sale and depriving the purchaser of the benefits of his bargain unless the inadequacy is such as to amount to fraud. Where inadequacy of price is relied upon as a ground for disturbing the sale, and the claim is that the price is so inadequate as to amount to fraud, there must exist the further fact that there is no right of redemption from the sale. (*Skakel* v. *Cycle Trade Publishing Co.* 237 Ill. 482; *Rader* v. *Bussey,* 313 id. 226.) In this case there is no right of redemption from the sale, as the fifteen months' period given by the statute for redemption had expired before sale. In the case of *Rader* v. *Bussey,* just cited, the rule is laid down that where the bid at a judicial sale is so inadequate as to shock the conscience of the court or to amount to sufficient evidence of fraud in law the sale will be set aside on that ground, alone. In determining this question no definite rule is laid down as to what per cent of the value of the property must be bid at the sale in order to amount to such gross inadequacy as to be evidence of a

legal fraud but each case must be determined by its own circumstances. In this case the property is shown to be worth at least $6000, or $5425 more than was bid for it. The record contains a sufficient guaranty that the property will sell for $6000 or more if re-sold, or more than ten times as much as appellant bid for it. While the record contains no evidence of misconduct whatever on the part of the commissioner or on the part of appellant, the purchaser, still the amount bid by the purchaser was so inadequate as to amount to a legal fraud on appellee if such sale should be confirmed.

There is another reason for sustaining the order of the circuit court in disapproving the report of sale. The rule has often been announced that if in addition to the inadequacy of price there be any appearance of unfairness, or any circumstance, accident or occurrence in relation to the sale of a character tending to cause such inadequacy, then the sale will be set aside. (Rorer on Judicial Sales, p. 234.) In this case appellee was promised by the solicitor for complainant in the foreclosure suit that he would notify her of the time and place of the sale. This he failed to do. It does not appear from the record that there was any intentional misconduct on the part of the solicitor, yet appellee relied upon that promise to her prejudice. She had a right to rely on such statement. She not only received no notice from the solicitor but received no notice from any source, as the record shows. This circumstance, coupled with the gross inadequacy of price, clearly entitled her to the right to have the sale set aside.

The order of the circuit court disapproving the report of sale and ordering a re-sale is affirmed.

*Order affirmed.*