(No. 24072.—

Arthur E. Shultz, Appellant, *vs.* Rosa Milburn *et al.* Appellees.

*Opinion filed June 11, 1937.*

KASSERMAN & KASSERMAN, for appellant.

BEN H. TOWNSEND, and M. J. WHITE, guardian *ad litem,* for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

The circuit court of Wabash county disapproved a report of sale of lands, made by a special master in chancery in a partition proceeding, and ordered a re-sale. This appeal is prosecuted by Arthur E. Shultz, the purchaser.

The sale was the third attempt to carry out the decree for sale. Two previous sales had been disapproved by the court. The last appraisal by the commissioners showed the value to be $31,100. At the last sale Arthur E. Shultz bid $22,050 and the premises were struck off to him on

the following terms: One-fourth of the purchase price in cash at the time of sale and the balance in three equal payments, respectively, six, twelve and eighteen months thereafter, bearing five per cent interest, secured by first mortgage, with the option to pay at any earlier date. At the time of the sale, the premises were under lease to a tenant, and there was a crop of corn thereon which was not reserved or mentioned at the sale or in the sale notices or in the decree.

During the pendency of the proceedings, Ida Foster, owner of an undivided one-tenth of the premises, died, and her minor heirs-at-law were substituted as parties defendant. Objections to the report of sale were filed by four of the interested parties and the minors, alleging the existence of the corn crop; that the rental portion thereof should be retained for the benefit of the parties, and that it was of the value of from $1200 to $1400; that the amount of the sale was inadequate, far below the actual value, and that upon a re-sale a much larger bid could be obtained, and that a responsible party who did not know of the previous sale is willing to bid greatly in excess of the sale price. No irregularity, misconduct or fraud in the proceedings is alleged. The sole basis of the objections is the inadequacy of the sale price. The testimony shows the sale was well advertised under the terms of the decree. It was openly conducted, the land was offered in separate tracts and there was competitive bidding. Shultz was the highest bidder and the premises were struck off to him for more than $1300 above the required two-thirds of the appraised value.

James C. Ellis, of Owensboro, Kentucky, who was not present at, and had no knowledge of, the sale at the time it was made, subsequently offered the master a cash bid of $22,200 on a re-sale of the property and deposited a forfeit of $1000. At the hearing, the agent of Ellis testified that in a telephone conversation about five minutes prior to his

testimony, Ellis had authorized him to increase the bid to $22,300, and offered to give the parties the corn crop or pay them the market price cribbed on the place. At the close of the testimony, Shultz waived the corn crop "that would properly have gone with the premises had the sale been approved by the court without objection." The court found that the offer of Ellis will exceed that of the purchaser by $1500 or more.

A sale by a master in chancery is not, until confirmed by the court, a sale in a legal sense. The chancellor has a broad discretion in its approval or disapproval. The highest bidder whose bid has been returned to the court as the best offer acquires no interest in or any right to the land and his bid is a mere offer to purchase. Confirmation is final consent, and the court being in fact the vendor, may consent or not, in its sound judicial discretion. This discretion, unless abused, will not be interfered with by a court of review. (*Farmers and Mechanics Bank* v. *Griffith,* 352 Ill. 323; *Miller* v. *Miller,* 332 id. 177; *Worden* v. *Rayburn,* 313 id. 495; *Ehrgott* v. *Seaborn,* 363 id. 292; *Jennings* v. *Dunphy,* 174 id. 86.) However, the discretion thus vested in the court is not a mere arbitrary discretion but must be exercised in accordance with established principles of law. A decision approving or disapproving a master's report of sale may be assigned for error. Where the sale has been conducted in accordance with the order of the court and the purchaser, as here, is a stranger to the order of sale, mere inadequacy of price will not justify a court in not confirming the sale and depriving the purchaser of the benefit of his bargain unless the inadequacy is such as amounts to fraud. (*Moeller* v. *Miller,* 315 Ill. 454; *Rader* v. *Bussey,* 313 id. 226; *Quigley* v. *Breckenridge,* 180 id. 627.) Where inadequacy of price is accompanied by substantial irregularity affecting the rights of a party to the proceeding, disapproval of the sale is sanctioned. Thus in *Miller* v. *Miller, supra,* a sale in partition, and in *Ehrgott*

v. *Seaborn, supra,* a sale by an administratrix, cited and relied upon by appellees, the action of the trial court in each case disapproving the sale was affirmed by this court. In the *Miller case,* the complainant claimed her attorney did not notify her the property was up for sale, that she did not know of it until after it was sold, and that he and his stenographer bought the property at a price far below its value. In the *Ehrgott case,* it was claimed the sale price was inadequate and the objections were supported by a bid substantially higher. We held that because the purchaser had not complied with the terms of sale by depositing the full amount of one-third of his bid, the irregularity justified disapproval of the sale. Neither of those cases is controlling or persuasive in this cause.

In cases where the interests of minors or others under legal disability are involved, courts will lend all possible aid to protect their interests, and may disapprove a sale when it appears to their interests to do so. It is, therefore, material to inquire as to the effect of the proceedings upon the rights of the infant heirs-at-law of Ida Foster. It is to be observed, first, that there is no testimony in the record to support the allegation in the objections that the corn crop was worth from $1200 to $1400. The objections were unverified and no witness testified to the value of the corn crop. There was, therefore, no basis for the holding of the trial court that the bid of Ellis was $1500 or more higher than the sale price. But if it be conceded that the crop was worth $1400, the gross receipts from the crop and the land on re-sale, at the price bid by Ellis, would be $23,700. An attorney fee of $1200 was allowed the plaintiff's solicitor. Without deducting anything for court costs, master's fees and commissions and expenses of advertisement, the net proceeds of the crop and the land would be $22,500. If there were no other factor to be considered, the net share of the minors would be one-tenth of that amount, or $2250, less their share of the costs

mentioned; but on October 9, 1930, a judgment for $2300 was entered in the circuit court of Wabash county against Ida Foster and her husband Thomas W. Foster in favor of the estate of her deceased father, by whose will she derived her interest in the property. By the decree of sale in the partition suit, it is provided that the judgment and interest shall be first paid out of her share of the proceeds of the sale and the balance only, if any, remaining after the payment of the judgment, shall be paid to her. A computation shows that the amount due on the judgment at the time of sale exceeds her net share of the proceeds of the land, the crop and the judgment. Her heirs-at-law are under no obligation to discharge the deficit, and it follows their interest could not be affected by a confirmation of the sale. The cases of *Kiebel* v. *Leick,* 216 Ill. 474, and *Jennings* v. *Dunphy, supra,* cited and relied upon by the appellees, where it appeared that incompetents would suffer substantial loss by confirmation of judicial sales, have no application here. (*Clegg* v. *Christensen,* 346 Ill. 314.) Moreover, the purchaser waived the crop. This was sufficient to obviate the objection that a sale to Ellis would give the minors their share of the proceeds of the crop. (*Abbott* v. *Beebe,* 226 Ill. 417.) The purchaser having waived the crop, the re-sale at the bid of Ellis would produce but $250 more than the purchase price, from which the additional advertising expense would be deducted. On a $22,050 sale, it cannot be seriously contended the inadequacy is such as to shock the conscience or savor of fraud.

Public policy requires there should be stability to all judicial sales and that they should not be disturbed for slight causes. Where the interests of incompetents are not involved, courts will not, in the absence of fraud or irregularity, refuse to confirm a judicial sale, or order a re-sale, on the motion of an interested party, merely to protect himself against the result of his own negligence, where he is under no disability to protect his own rights at such

sale. *Abbott* v. *Beebe, supra; Quigley* v. *Breckenridge, supra.*

Under all the facts in the record the objections to the master's report should have been overruled and the sale confirmed.

Inasmuch as Shultz waived the crop in open court, the order of the chancellor is reversed, with directions to confirm the master's sale of the land without the crop.

*Reversed and remanded, with directions.*