(No. 28862.—

LABAN EVANS, Executor and Trustee, *et al.*, Appellees; *vs.* JOHANNA HUNOLD *et al.*—(CLIVE ERISMAN, Appellant.)

*Opinion filed January 23, 1946—Rehearing denied March 14, 1946.*

JOHN J. BAKER, of Shelbyville, and ROBERT G. BURN-SIDE, of Vandalia, for appellant.

WILL M. ALBERT, of Vandalia, for appellee Laban Evans, Executor and Trustee, and LEON LECOUR DROLET, and HENRY MCGURREN, both of Chicago, for certain other appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant seeks reversal of a decree of the circuit court of Fayette county disapproving a sale of lands made at public auction, and ordering a resale thereof under the terms of the will of Carl Hunold, deceased. Appellee Laban Evans, as executor and trustee under the will of Hunold, filed a complaint seeking construction of the second paragraph of the will, and for other relief. All the necessary parties were in court, some of whom answered and others were defaulted.

The second paragraph of the will, so far as necessary to this inquiry, is as follows: "Second: I will, devise and bequeath to Laban Evans, Trustee, for the uses and purposes herein stated, all of the real estate owned by me in Christian County, Illinois, and I do direct that said Laban Evans as such Trustee, as soon after my death as conveniently can be done, sell and dispose of the real estate owned by me in Christian County, for the best price obtainable, either at public or private sale, and that no order of any Court shall be necessary for said Trustee to convey title in said lands and said Trustee shall have the full power and authority to convey said lands to the purchaser by suitable instruments which will convey said property. That the money realized from said sale shall be used as follows: If there be any indebtedness on said real estate, said Trustee shall pay said indebtedness. That said Trustee shall take said moneys received from said sale and use the same as Trustee, as herein further indicated."

On November 16, 1944, a decree was entered directing the trustee to sell the land in Christian county, described in paragraph 2 of the will, at public or private sale, deliver to the purchaser a good and sufficient trustee's deed upon receipt of the purchase price thereof, to pay the mortgage indebtedness with interest thereon, and cause said mortgage to be released and "the balance remaining from said purchase price shall be reported to this Court for approval thereof; and that said balance of moneys, shall be invested by said Trustee as hereinafter indicated." Appellee trustee thereupon advertised that he would sell the land at public sale on December 30, 1944, pursuant to the last will and testament of Carl Hunold, deceased, and pursuant to decree of the circuit court of Fayette county, "Terms of sale: 50% of the Selling Price to be paid in Cash on day of sale. Balance of purchase price to be paid on tender of Deed and approval of sale by the Circuit Court of Fayette county." The sale was well attended. One Guy Cramner, representing appellant, bid on the property. Others also bid and it was sold, after keeping bids open for about an hour, to Cramner for appellant for $17,500. Appellant's check was given to appellee Evans, trustee, for $8750, one half of the sale price. The check was filled out by someone acting for the trustee and there was endorsed upon its face "for ½ Bid on Hunold Farm Subject to Approval."

On January 10, 1945, appellee trustee filed his report showing that he held a public sale December 30, 1944; that there were many people present and different persons bid on the premises; that appellant bid $17,500 and the property was struck off to him, and in accordance with the terms of sale appellant gave his check for $8750, one half of the purchase price bid by him; that thereafter one Philip Hebert offered $19,500 and delivered his check for $9750. Appellee recommended that the sale to appellant be not approved and asked the court to determine who was the highest and best bidder, and if, before the hearing, any

other persons desire to bid, that they be permitted to do so up to the time of the hearing, and that the highest bid be accepted.

Appellant was permitted to intervene as a party defendant. In his petition he alleged he was a stranger to the record and had no interest in the estate prior to the sale; that his bid at the sale was the highest and best bid and the premises were struck off to him by appellee trustee for $17,500 and that he delivered to appellee trustee his check for $8750, the one-half of the purchase price, in accordance with the terms of the sale, and that he was ready, able and willing to pay the remaining $8750 and is entitled to a deed to said premises. Appellee's motion to dismiss the intervening petition was overruled and appellant, in his answer to the report of the trustee, prayed that the sale be confirmed in him and that appellee trustee be directed to convey the premises to him. The court denied the prayer of the answer of appellant, refused to approve Hebert's bid, and ordered appellee trustee to readvertise and offer the land for sale at public vendue and report the sale to the court for approval.

The sole question raised by the assignment of errors arises on the refusal of the chancellor to approve the sale made to appellant on December 30, 1944, at public sale. That question is discussed by appellant under the following heads: (1) Did the sale require the approval of the circuit court to establish its validity? (2) If no court approval was necessary, was it error for the court to order a resale for the sole reason a higher bid was made a week after the public sale? (3) If the sale required court approval, did the court exercise its discretion properly in refusing to approve the public sale and ordering a resale under the undisputed evidence?

Appellee trustee's authority to sell the land was derived from the will, which gave him title and discretion to sell at public or private sale, and specifically directed that no

order of any court should be necessary for the trustee to convey title to the land. He was required to give bond, to qualify as trustee. The circuit court was the sole authority for approval of this bond. Appellee trustee asked the court to construe the will as to his powers and duties. This the court did by directing him, as trustee, to sell at either public or private sale, but the decree did not direct that the sale be reported to the court for approval before executing a deed to the purchaser.

Appellant's bid and purchase at the sale was according to the terms of sale as advertised. Instead of tendering the deed, Evans, as trustee, reported to the court, as we have indicated.

This case does not present the usual question of the power of a court of chancery over a court sale. While, it is true, the court had jurisdiction of the trust and of the parties, its decree did no more than direct the trustee to carry out the provisions of section 2 of the will creating the trust.

It is the well-settled rule that stability must be given to judicial sales, and where the sale has reached the point where title has vested in the purchaser it may not be overthrown because a later larger bid is received. (*Straus* v. *Anderson,* 366 Ill. 426.) Where fraud or unfairness is shown from any source which operates to the prejudice of an interested party, a court of chancery is abundantly justified in refusing to approve a sale. *Levy* v. *Broadway-Carmen Building Corp.* 366 Ill. 279; *Roberts* v. *Goodin,* 288 Ill. 561.

The power of a court of equity to refuse to confirm a sale or set aside one for mere inadequacy of the sale price, has had wide judicial consideration. The apparent lack of uniformity of decision has arisen because of the failure to differentiate between an executed sale which did not require the approval of the court and a purported sale which required such approval to complete and make it final. We

are not here concerned with a sale of the latter class. The will expressly provided it was not necessary to obtain the approval of any court and the decree directed, as did the will, that the trustee was to sell at private sale or at public auction, as he chose. The trustee elected not to exercise his right and power given him under the will but to place the burden of acceptance of a bid upon the court.

There is sound equitable basis for the protection of the stability of judicial sales. If a prospective bidder be allowed to wait until after the property is declared sold to a given bidder, then later offer a larger sum, not only would the stability of judicial sales be destroyed, but such practice would greatly discourage bidding at a sale and tend toward lower bids thereat, for no one would care to bid at a sale so left open to subsequent bids. The result would be that estates would thus be deprived of advantageous sales, while the office of auctioneer would be transferred to the chancellor. In cases of sales requiring the approval of the court, the chancellor has a broad discretion to confirm or disapprove such sales. (*Levy* v. *Broadway-Carmen Building Corp.* 366 Ill. 279; *Miller* v. *Miller,* 332 Ill. 177; *Hart* v. *Birch,* 130 Ill. 426.) However, such discretion must be exercised according to rules of law. *Shultz* v. *Milburn,* 366 Ill. 400.

As heretofore noted, the decree did not require the approval of the sale by the court, but did require approval of the report of the trustee that he had made the sale, paid the mortgage and caused the same to be released; "and the balance remaining from said purchase price shall be reported to this court for approval thereof, and that said balance of moneys shall be invested by said Trustee as hereinafter directed."

It was the act of appellee in advertising the sale that for the first time called for the approval of the sale by the court. Therefore this transaction does not come strictly within the rules governing sales which require the approval of the court. This was an executed sale. Sales not re-

quiring approval of the court will not ordinarily be set aside because of inadequacy of price, in the absence of fraud or some irregularity in the proceedings attendant upon the sale. *Straus* v. *Anderson,* 366 Ill. 426.

No claim is made that there was any irregularity or fraud in the sale in this case. Appellant's bid was accepted as the highest and best bid and the premises were struck off to him. He was a stranger to the record and can in nowise be benefited by a higher sale price for the property. An offer of a larger sum was made something over a week thereafter. There is no claim or reason shown why Hebert did not bid on the day of the sale. The evidence shows he was present at the sale.

In a case such as this, where the purchaser is a stranger to the order or decree of sale, mere inadequacy of price will not justify a court in refusing to confirm a sale, thus depriving the purchaser of the benefit of his bargain, unless the inadequacy is such as amounts to fraud. (*Shultz* v. *Milburn,* 366 Ill. 400; *Moeller* v. *Miller,* 315 Ill. 454; *Rader* v. *Bussey,* 313 Ill. 226; *Quigley* v. *Breckenridge,* 180 Ill. 627.) Where the inadequacy of price is accompanied by substantial irregularity which affects the rights of a party or parties to the proceeding, reviewing courts will sanction the disapproval of a sale. (*Shultz* v. *Milburn,* 366 Ill. 400.) In this case the only reason appellee seeks disapproval of the sale is because more money was offered. The fact that events subsequent to a sale in good faith result in the trust estate being deprived of a substantial sum of money, does not outweigh the injustice which a denial of confirmation would work upon appellant.

The chancellor erred in refusing to approve the trustee's sale to appellant. The decree of the circuit court is reversed and the cause remanded with directions to enter a decree granting the relief prayed by appellant and directing conveyance to him upon payment of the balance of his bid.

*Reversed and remanded, with directions.*