**In re Anne G. RISTICH, Debtor.**

**Bankruptcy No. 85B4764.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Jan. 31, 1986.

Bennett A. Kahn, Law Offices of Melvin J. Kaplan, Chicago, Ill., for debtor.

Richard Weinberg, Antonow & Fink, Chicago, Ill., for movant First Nat. Bank of Schiller Park.

## MEMORANDUM OPINION

(As modified and reissued
January 31, 1986)

JACK B. SCHMETTERER, Bankruptcy Judge.

This cause comes to be heard upon the Motion of FIRST NATIONAL BANK OF SCHILLER PARK ("bank") to Dismiss debtor's Bankruptcy proceeding, or, in the alternative, to grant Relief from the Automatic Stay. Following the hearing held, Findings of Fact and Conclusions of Law have been separately entered. This Memorandum refers to the Facts thereby found, and the Conclusions of Law rested on the reasoning of this Memorandum. For reasons set forth therein, the Motion to Modify Stay has been allowed and the alternative Motion to Dismiss has been denied, by orders entered separately. ·

## PLEADINGS AND MOTION

On February 27, 1984, petitioner, First National Bank of Schiller Park, filed a Foreclosure action in the Circuit Court of Cook County, Illinois. The Complaint sought foreclosure of mortgages on debtor's properties located at 7401 Fullerton Avenue, Elmwood Park, Illinois, and, 9543 Greenwood Drive, Des Plaines, Illinois.

A Judgment of Foreclosure was entered on June 12, 1984, and the Sheriff's Sale was set for August 8, 1984. On August 7, 1984, debtor filed a petition under Chapter 13 which invoked the automatic stay and prevented the sale from proceeding.

On October 10, 1984, debtor's Chapter 13 proceeding was dismissed for failure to list certain creditors. The previously scheduled Sheriff's Sale was held on October 16, 1984, and petitioner's bids on both parcels were accepted followed by issuance of the Sheriff's Certificates of Sale.

Debtor filed a second petition under Chapter 13 on October 29, 1984, which was dismissed on Motion of petitioner on November 29, 1984.

On April 15, 1985, debtor filed her third petition under Chapter 13 which is the proceeding now pending before the Court. Petitioner alleges, and it is not controverted by debtor, that the statutory period of redemption (ILL.REV.STAT. ch. 110, ¶ 12–122) was to expire on April 17, 1985. Debtor's petition was therefore filed before issuance of the Sheriff's deed.

Debtor filed her plan on May 15, 1985, under which she proposes to pay 100% to all creditors within six months after confirmation. The plan is to be funded with monthly payments of $100 and with the net proceeds anticipated by her upon sale of the two properties which were the subject of the foreclosure action.

Petitioner filed the within Motion to Dismiss for "bad faith" or, in the alternative, relief from the automatic stay. Debtor has responded by asserting that the prior dismissals were caused by her previous attorney's failure to provide adequate representation; that the bank interfered with debtor's ability to sell the parcels by failing to cooperate with prospective purchasers; that Bankruptcy Code § 362 tolls the running of the statutory redemption period in order to allow her to dispose of the properties and cure all defaults under § 1322(b); and, in the alternative, that the sheriff's sale may be avoided as a fraudulent conveyance under 11 U.S.C. § 548(a)(2) because the fair market value of the properties far exceeds the amount of the foreclosure sale bid.

This Court conducted hearings at which it heard testimony from debtor; Steven Dimeo, president of First National Bank of Schiller Park; and Richard S. Weinberg,

attorney for the bank. Evidence was also received establishing the fair market value of the properties as well as outstanding encumbrances against them.

## ASSERTED "BAD FAITH" FILING

Movant's "bad faith" argument is premised upon 11 U.S.C. § 109(f) which prevents an individual from being a debtor under Title 11 if that person was a debtor in another case under Title 11 during the preceding 180 days and the prior case was dismissed for willful failure of the debtor to appear before the Court in proper prosecution of the case.

Debtor's previous Petitions under Chapter 13 were indeed dismissed for failure to appear. However, the record offered pertaining to the previous dismissals failed to establish evidence of willfulness and movant has failed to support its contention with evidence. Therefore, the bank's contention that this Petition was filed in "bad faith" is without support by the evidence presented.

## ASSERTED INTERFERENCE BY BANK

Debtor also contends that the bank interferred with her attempts to sell the properties by failing to cooperate with prospective purchasers. The evidence establishes that on February 15, 1985, debtor entered into a contract to sell the Fullerton parcel for $33,000, and on March 25, 1985, entered into a contract to sell the Greenwood parcel for $65,000.

With reference to the Fullerton parcel, Mr. Steven Dimeo, president of the First National Bank of Schiller Park, testified that debtor brought him the contract, he read it and copied it, and, told her to contact Mr. Weinberg, the bank's attorney. Mr. Richard Weinberg testified that he was contacted by debtor's attorney, Mr. Victor. Following several conversations, Weinberg agreed that the bank would consider reducing the redemption price if Mr. Victor would inform the bank of how much it would receive and also provide a breakdown of all expenses which would be paid out of the proceeds. Weinberg further tes-

tified that he never heard from Victor again. That testimony was not controverted by debtor and clearly establishes the bank did not interfere with debtor's attempt to sell the Fullerton property.

Regarding the Greenwood property, debtor testified that on the day after entering into the contract, she had a conference with the president of the bank, Dimeo. She testified she showed him the contract, which he read, and Dimeo then called Weinberg and told him to go along with the transaction.

Dimeo testified that he did have a conference with debtor but never read the contract nor did he call Weinberg in debtor's presence. He testified that he told debtor to contact Weinberg because he did not have the authority to approve any transactions regarding the property. Dimeo further testified that he later called Weinberg and told him debtor had something of interest and hopefully she would contact him.

Weinberg testified that he received a call from an attorney named Bailey, who represented the prospective purchasers of the Greenwood property. Bailey told Weinberg that his clients had entered into a contract with debtor but were not going through with it because the redemption period was expiring soon. Bailey then asked if the bank would deal with his clients and Weinberg told him the bank would consider it only after receiving a deed and possession.

█ The Illinois statute provides that a mortgagor has six months after the Sheriff's sale in which to obtain funds to redeem the property. ILL.REV.STAT. ch. 110, ¶ 12–122. There is no requirement that the purchaser at a Sheriff's sale aid the mortgagor in its efforts. The testimony presented only established that the bank was unwilling to do more than wait for the six month period to expire. A lack of cooperation approximately three weeks before the redemption period terminated does not rise to the level of interference.

In short, Debtor has not established the "interference" by the bank that she alleged.

## ASSERTED "TOLLING" OF REDEMPTION PERIOD

Debtor has proposed a plan under which she would be given six months to sell the foreclosed properties and pay 100% to all creditors. The Bank has moved to lift the stay asserting that debtor no longer has an interest in the properties under 11 U.S.C. § 108(b). Debtor responds by asserting that the "fresh start" concept embodied in § 1322(b) cannot be fulfilled unless the automatic stay provided by § 362 is applied to toll running of the statutory redemption period.

Pursuant to 11 U.S.C. § 1322(b)(3), (5), a Chapter 13 plan may provide for the curing of a mortgage default within a reasonable time if debtor maintains his regular payments while the case is pending. The right to cure only exists if the mortgage is in default.

Under Illinois law, the purchaser at a foreclosure sale obtains no title in the property until the period for redemption expires. *Kronenberger v. Heinemann*, 190 Ill. 17, 18, 60 N.E. 64 (1901). However, after the sale has occurred, the lien on the property created by the mortgage is extinguished and the property is no longer subject to it. *Ogle v. Koerner*, 140 Ill. 170, 179, 29 N.E. 563 (1892). In order to redeem the property, the mortgagor must pay the purchaser the sale price plus interest at 10% per annum within six months from the date of sale. ILL.REV.STAT. ch. 110, ¶ 12–122 (1984). Otherwise, deed will issue after the redemption period has passed to convey title to the purchaser.

As a consequence of the foreclosure sales here, the mortgages ceased to exist and no longer encumbered the properties. Debtor filed her petition after the mortgages were extinguished so there was no longer a default which could be cured under Chapter 13. See *Matter of Tynan*, 773 F.2d 177 (7th Cir., 1985).

The issue of whether § 362 or § 108(b) controls tolling the redemption period was also resolved in *Tynan*. In that case, which was decided on similar facts, the Seventh Circuit Court of Appeals held that § 108(b) is the controlling provision. *Id.*, at 179.

Debtor filed her petition on April 15, 1985, two days before the redemption period expired. Pursuant to § 108(b)(2), the period was extended 60 days, or until July 15, 1985. The properties were not redeemed by that date and debtor's interest thereupon terminated.

## THE ASSERTED FRAUDULENT TRANSFER UNDER § 548(a)(2)

Finally, debtor argues in the alternative that this Court should avoid the foreclosure sale as a fraudulent transfer under 11 U.S.C. § 548(a)(2). That section provides:

§ 548.

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

. . . . .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation;  and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

### Introduction

There is a conflict among the Circuits on the issue of whether a mortgage foreclosure sale is a fraudulent "transfer" under the Bankruptcy Code. The Fifth Circuit, in *Durrett v. Washington National Insurance Co.*, 621 F.2d 201 (5th Cir.1980), and *Abramson v. Lakewood Bank and Trust Co.*, 647 F.2d 547 (5th Cir.1981); cert. den. 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982), found that a foreclosure sale was a transfer under § 67(d)

of the Bankruptcy Act. The Court reasoned that while, under state law, title was transferred upon creation of the mortgage, debtors retained the right of possession which is an interest in property that was not "transferred" until the foreclosure sale.

The Eighth Circuit followed the same reasoning in *In Re Hulm*, 738 F.2d 323 (8th Cir.), cert. den. —— U.S. ——, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984), and further held that the price received at a foreclosure sale might not provide a "reasonably equivalent" value even in the absence of fraud or collusion. That case was remanded to the Bankruptcy Court for an evidentiary hearing to determine whether the sale price was a reasonably equivalent value in exchange for debtor's interest.

*Durrett* and *Abramson* were based on Texas law which holds that execution of a mortgage transfers title to the mortgagee and the mortgagor's retained right of possession terminates with the foreclosure sale. In both cases, debtors had therefore lost their remaining interest in the property through the foreclosure process prior to filing of their petitions in bankruptcy.

Though Illinois is commonly referred to as a "title theory" state (see *In Re Crawford*, 2 B.R. 589, 594 (Bankr.N.D., Ill. 1980)), the Illinois Supreme Court has long held that the execution of a mortgage only creates a lien on the property. *Kling v. Ghilarducci*, 3 Ill.2d 454, 455, 121 N.E.2d 752 (1954). Title and the right to possession are retained by the mortgagor through the foreclosure process and only terminate upon expiration of the redemption period following foreclosure sale. *Lightcap v. Bradley*, 186 Ill. 510, 58 N.E. 221 (1900). Here, debtor's current bankruptcy intervened before the bank obtained its deeds.

*Hulm* was based on North Dakota law which is similar to the law of Illinois.

The Ninth Circuit took a different view in *Madrid v. Lawyers Title Insurance Corp.*, 725 F.2d 1197 (9th Cir.); cert. den. —— U.S. ——, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984). The *Madrid* Court concluded that no transfer occurred upon the foreclosure sale, and therefore did not decide the question of whether the price received was a reasonably equivalent value. *Id.* at 1199.

The Ninth Circuit reached its decision by reading § 548(d)(1) as the definition of transfer for purposes of § 548 rather than the broader definition contained in § 101(48). Because Nevada law provides that a transfer by deed of trust is perfected upon recordation, the Court concluded that the transfer was perfected under § 548(d)(1) more than one year before the petition was filed.

Though *Matter of Tynan*, 773 F.2d 177 (7th Cir., 1985) was based on similar facts, the issue of whether the sale could be construed as a fraudulent conveyance was not presented to or considered by our Seventh Circuit Court of Appeals. Nor have we found District Court or Bankruptcy Court decisions on the issue in this District. Within the Seventh Circuit, there has been only one reported decision in which a Court was required to determine whether a foreclosure sale was a fraudulent transfer under § 548(a)(2). See Judge Martin's decision *In Re Berge*, 33 B.R. 642 (Bankr.W.D. Wisc., 1983).

In *Berge*, debtors defaulted on a land contract and the sellers obtained a judgment of "strict foreclosure" within hours before the petition in bankruptcy was filed. The Bankruptcy Court followed *Durrett* and concluded that the judgment of strict foreclosure was a "transfer" because debtor's equitable interest in the property was involuntarily terminated by the decree. *Id.* at 648. Because a judgment of strict foreclosure under Wisconsin law automatically reverts title to the contract seller without a public sale, and also because appreciated property was forced to be transferred in exchange for release of the debt, the Court also concluded that the transfer was for less than a reasonably equivalent value. *Id.* at 649.

*Berge* is dissimilar to this case. In *Berge*, there was a strict foreclosure of a land contract which quickly terminated debtor's equitable interest under Wisconsin

law. Here, there was a judicial sale following mortgage foreclosure, and the sale was advertised to the public and open to bidding. Further, Illinois law provides for a six-month redemption period whereas the Wisconsin statute empowers the state court to set the redemption period in each case (which in *Berge* was 31 days). Therefore that case did not determine issues faced here.

■ A review of the decisions reached in other Circuits, combined with the explicit language of § 548, leads to the necessary conclusion that a mortgage foreclosure sale may under some circumstances be a fraudulent transfer under the Bankruptcy Code. In order to establish a fraudulent transfer under § 548(a)(2), five elements must be proven:

(1) that an interest of the debtor in property,

(2) was voluntarily or involuntarily transferred,

(3) within one year of the date of filing the petition;

(4) that the debtor received less than a reasonably equivalent value; and,

(5) that the debtor was insolvent at the time of the transfer, or became insolvent as a result thereof.

(a) *Interest of the Debtor in Property*

■ The term "interest of the debtor in property" is not defined by the Bankruptcy Code and must be determined under state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Under Illinois law, the granting of a mortgage creates a lien on the property in favor of the mortgagee but title remains with the mortgagor. *Kling v. Ghilarducci,* 3 Ill.2d 454, 455, 121 N.E.2d 752 (1954). When the mortgage is in default and the property sold at a foreclosure sale, legal and equitable title, as well as the right of possession, remain with the mortgagor. *Lightcap v. Bradley,* 186 Ill. 510, 58 N.E. 221 (1900). The purchaser at foreclosure sale obtains neither legal nor equitable title, but only the alternative right to receive either the redemption money, or if no redemption is made, a deed. *Hruby v. Steinman,* 374 Ill. 465, 30 N.E.2d 7 (1940). Thus, title does not pass to the purchaser as a result of an Illinois foreclosure sale. The certificate of purchase conveys a vested right to future title subject only to divestment by redemption within the six month period.

■ The foreclosure sale therefore transformed this debtor's "fee simple absolute" into a "fee simple determinable". Her title, right to possession and right to alienate the properties were not transferred to the purchaser by the sale. However those rights following the sale were subject to expiration of a stated, and limited, time period. The sale reduced debtor's property rights and interest in her properties to a right of redemption. See *Matter of Tynan,* 773 F.2d 177, 179 (7th Cir., 1985). Only if she exercised that right could her fee simple determinable again become a fee simple absolute.

Accordingly, it is clear that under Illinois law very real "interest(s) of the debtor in property" were effected by reasons of the foreclosure sale. The first element under Code § 548(a)(2) is clearly satisfied.

(b) *"Insolvent" at transfer or thereby become insolvent*

The foreclosure sale occurred on October 16, 1984, which was six months less two days before debtor filed her present petition in bankruptcy and within the one year period before filing imposed by Code § 548(a)(2). Also, debtor's schedules reveal that debtor is insolvent as defined by 11 U.S.C. § 101(29) when the real estate and mortgage liabilities are deleted. The Court understood from the parties that insolvency was conceded and that the schedules were not challenged as to insolvency. No evidence was offered as to insolvency.

(c) *"Transfer"*

The conflict which exists among the Circuits primarily focuses on the definition of "transfer" in the context of a fraudulent transfer in Bankruptcy. The Ninth Circuit has taken the position that a "transfer" for purposes of § 548 is defined by Code

§ 548(d)(1) and does not relate to the broad definition contained in § 101(48). See *Madrid v. Lawyers Title* 725 F.2d 1197, 1201 (9th Cir., 1984), *cert. den.* —— U.S. ——, 105 S.Ct 125, 83 L.Ed.2d 66 (1984).

The Fifth and Eighth Circuits have taken a more expansive view of "transfer". See *Durrett v. Washington,* 621 F.2d 201 (5th Cir., 1980) [1] and *In Re Hulm,* 738 F.2d 323 (8th Cir., 1984). In these decisions, the Courts reasoned that § 548(d)(1) is temporal rather than definitional and the issue of whether a certain act is a transfer under the Bankruptcy Code must be determined under § 101(48).

11 U.S.C. § 548(d)(1) provides:

For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.

The *Madrid* Court read this subsection to define the only transfer in the foreclosure action to be the creation and recordation of the deed of trust. Because the deed of trust was "perfected" under Nevada law by recording more than one year before the petition was filed, the Court held the transfer did not fall within the purview of § 548. The Ninth Circuit's position was that a foreclosure sale is enforcement of a lien by a secured creditor rather than a transfer of an interest in property.

■ However, as Judge Farris pointed out in his concurring opinion:

The debtor who gives a creditor a security interest in his property ... often retains an interest in the property, such as

possession, that can be transferred at a later date. As I understand the majority's rationale, such subsequent transfer would not be covered, even if effected with actual intent to defraud. Section 548(d)(1), relied upon by the majority, does not support the 'one transfer' rule. *In Re Madrid,* 725 F.2d at 1204. This Court finds that reasoning sound and declines to adopt the restrictive interpretation of the main opinion. The language of § 548(d)(1) is intended to set a specific time when a transfer has occurred in determining whether it is fraudulent under the Bankruptcy Code. If that date is within one year before the date of filing of debtor's petition, and the other elements of a fraudulent transfer can be proven, the transfer is voidable.

■ The issue of whether a specific act is a transfer must be determined under the broad definition contained in § 101(48) which states:

"transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

As discussed in part (a) hereof (p. 574), the foreclosure sale here under Illinois law was an involuntary disposition of debtor's absolute title. It therefore comes within the purview of § 548(a)(2) as a "transfer". Once the sale was confirmed by the state court, no bona fide purchaser from debtor could acquire an interest in the property superior to the interest held by the Purchaser-bank. A post-sale transfer of the property by debtor would have been effective only upon payment of the redemption price. In the absence of such payment, a transfer to a third party by debtor would have been statutorily defeated upon termination of the redemption period. To

---

**1.** The concurrence in *Durrett* would have ruled that the foreclosure sale was not a voidable transfer because the language of § 548(a) required that debtor participate in the transaction but the foreclosure proceeded without her participation or consent. The changes enacted by

the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, effectively invalidated this reasoning by including the additional language "voluntary or involuntary" to § 548(a).

decline to find a "transfer" upon foreclosure sale would be to ignore the realities of Illinois law.

### (d) "Reasonably Equivalent Value"

The remaining issue which must be determined is whether debtor received a reasonably equivalent value in exchange for the transfer. The Sixth Circuit, in *Winshall Settlor's Trust*, 758 F.2d 1136 (1985), adopted the view expressed by the Bankruptcy Appellate Panel in *In Re Madrid*, 21 B.R. 424 (Bankr. 9th Cir., 1982), aff'd on other grounds, 725 F.2d 1197 (9th Cir.), cert. denied —— U.S. ——, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984), that reasonable equivalence should be determined under the state law of fraudulent conveyances. That Court noted that under both Nevada and Michigan law, mere inadequacy of price alone does not justify setting aside a sale absent additional proof of fraud, unfairness or oppression which accounts for the inadequate price.[2]

In contrast, the Fifth and Eighth Circuits viewed reasonable equivalence as an issue which must be decided under Bankruptcy law. The *Durrett* Court compared the purchase price to fair market value and concluded that the ratio was much lower than the percentage approved in other reported decisions under § 67(d) of the Bankruptcy Act. In *Hulm*, the District Court had relied on the Bankruptcy Appellate Panel's decision in *In Re Madrid*, 21 B.R. 424 (Bankr. 9th Cir., 1982), and concluded that the price received at a foreclosure sale is reasonably equivalent absent a showing of fraud or collusion. The Court of Appeals concluded that, for purposes of § 548(a), the bid received cannot be presumed to be reasonably equivalent without an evidentiary hearing and determination by the Bankruptcy Court. *In Re Hulm*, 738 F.2d 323, 327 (8th Cir., 1984). The Courts that have considered these issues often require a federal evaluation of reasonable equivalence because of harshness of state law. See, e.g., *In Re Ruebeck*, 55 B.R. 163 (Bankr.D. Mass.1985) ¶ 70,876 Commerce Clearing House. Absence of reasonable notice to the debtor is often a major factor in those states, while Illinois law would invalidate a sale for "irregularity" should the debtor not receive reasonable notice (see fn. 3 infra). Illinois law gives extensive procedural protections of notice Ch. 110 *Ill.Rev. Stats.* § 12–117, 12–118; six-month redemption under 12–122 and 12–139; and against misrepresentations or wrongful inducement of abandonment, among other rights.

The Courts which have declined to follow *Durrett* have based their decision on policy considerations. Though the Ninth Circuit did not address the issue of reasonable equivalence, its restrictive reading of § 548(d)(1) was grounded on a belief that avoiding foreclosure sales would create a new "de facto" right of redemption through possible future bankruptcy filing, which would have a chilling effect upon participation in foreclosure sales and upon lenders. *Madrid*, 725 F.2d at 1202. The dissenting opinion in *Abramson v. Lakewood Bank and Trust Co.*, 647 F.2d at 550 (Clark, J., dissenting), expressed concerns that inhibiting participation would further depress prices and increase the potential size of deficiency judgments. The Sixth Circuit cited the concerns expressed by Judge Clark in concluding that reasonable equivalence should be determined under the state law standard that mere inadequacy of price is insufficient to set aside a sale absent proof of fraud, unfairness or oppression. *Winshall Settlor's Trust*, 758 F.2d at 1139.

Though the Seventh Circuit was not presented with the issue of reasonable equivalence, it expressed concern about the effect on title when bankruptcy intervenes following a foreclosure sale. *Matter of Tynan*, 773 F.2d 177 (1985). In *Tynan*,

---

**2.** The Illinois Fraudulent Conveyance Statute, ILL.REV.STAT. ch. 59, § 4, does not apply to a foreclosure sale because it requires a voluntary act by debtor. See *Tcherepnin v. Franz*, 457 F.Supp. 832, 836 (N.D.Ill., 1978). However, under Illinois law, a foreclosure sale will not be set aside for mere inadequacy of price; there must be proof of "mistake, accident, surprise, misconduct, fraud or irregularity." *Block v. Hooper*, 318 Ill. 182, 184, 149 N.E. 21 (1925).

debtors argued that the 60 day extension granted by § 108(b) should be stayed pending disposition of the appeal. The Court refused, stating that "[i]f we were to adopt their position, we would cloud every title secured through a foreclosure sale due to the possible filing of a voluntary petition in bankruptcy during the statutory redemption period." *Id.* at 179. If the Fifth and Eighth Circuit views were followed here, such would indeed "cloud every title secured through a foreclosure sale" and the *Tynan* ruling could simply be avoided by asserting a fraudulent conveyance theory under § 548(a)(2).

This Court has therefore considered whether to view the reasonable equivalence issue solely as a question under Bankruptcy law or whether the policy considerations expressed by the Seventh Circuit and other Courts require application of Illinois law standards. It seems clear that the views and concerns expressed so recently by our Seventh Circuit require application of the Illinois law standard in determining reasonable equivalence so as to avoid a new title "cloud" over foreclosure sales. Even had the Seventh Circuit not expressed its concerns, this Court would be concerned with the unmeasurable but nonetheless foreseeable harm to the mortgage market and property ownership that would result from acceptance of *Durrett* and *Hulm*. To the extent that some foreclosure sales draw third party purchasers, they would be discouraged from bidding. Also, debtors would thereby obtain a new right to proceed slowly through several bankruptcies, as here, and then come in long after the foreclosure sale and redemption period have passed to set the sale aside. That would indeed permit playing of a new game of "catch me if you can" in bankruptcy. It cannot be doubted that such a risk to lenders would lessen their willingness to lend and therefore make harsher their lending standards and charges, and thus depress the real estate market and impair borrowing.

█ When the purchaser at a foreclosure sale is an unrelated third party, there is an irrebuttable presumption that the sale was for a reasonable equivalence. See *In Re Berge*, 33 B.R. 642, 647 (Bankr. W.D.Wisc., 1983) citing 38 BUS.LAW 1605, 1624–1625 (1983). A bid by an independent third party presumes open, competitive bidding at which the property was purchased at a fair value under the circumstances. However, the value of property at any foreclosure sale is likely to be less than that of the same property in an ordinary arms-length transaction for immediate sale. The third-party purchaser after foreclosure must provide cash at the time of sale and then wait until the redemption period expires before he can receive title, so that purchaser will likely offer a discount of fair cash market value.

The Bankruptcy Code contains provisions which would allow the trustee or debtor to bring an action to recover property subject to § 548(a)(2) within four years after the sale. See 11 U.S.C § 546, § 548, and § 550. If § 548(a)(2) applied to every foreclosure sale, that would certainly be the "cloud [on] every title secured through foreclosure sale" that concerned the Seventh Circuit in *Tynan, supra* at 179. Apart from being an unconscionable burden on titles obtained from foreclosure sales, such an application would effectively eliminate third party purchasers from the foreclosure process. The attendant result would be that the amount of deficiency judgments would increase, at least as to those properties which presently attract third parties to foreclosure sales. That would also harm the mortgage market in Illinois as earlier discussed.

█ This Court concludes that a sale to a third party purchaser is presumptively reasonable equivalent value absent a showing of actual fraud or collusion recognized by Illinois law. That ruling protects both debtor and the purchaser. Debtor receives the necessary protection because the sale to a third party indicates open, competitive bidding which resulted in obtaining the highest price under the circumstances. The purchaser, whose relationship to the transaction is solely that of a speculative

investor, will not have his title threatened should a petition be filed in bankruptcy within one year after the sale.

However, when the purchaser is the creditor, the possibility of some other irregularity may be present. This Court therefore adopts the view of the Sixth Circuit in *Winshall Settlor's Trust,* 758 F.2d 1136 (6th Cir., 1985) and holds that when the mortgagee is the purchaser, the state law standard of reasonable equivalence will be applied. Under Illinois law, mere inadequacy of price is insufficient to set aside a foreclosure sale; there must be proof of "mistake, accident, surprise, misconduct, or irregularity." *Block v. Hooper,* 318 Ill. 182, 185, 149 N.E. 21 (1925). "Irregularity" includes, but does not require, fraud or collusion.[3] The burden of proof on this issue, and each element of § 548(a)(2), is with the party asserting the transfer was a fraudulent conveyance—the debtor.

In this case, the successful bidder at the foreclosure sale was the First National Bank of Schiller Park, the mortgagee. It has previously been established that a property interest of debtor was transferred within one year before her petition in bankruptcy was filed and that the transfer was during or resulted in her insolvency. There is a rebuttable presumption that the price bid by the bank was for a reasonably equivalent value. The burden is on debtor to prove that the bank received the property through fraud, collusion, or because of other irregularities present at the time of the sale sufficient to meet the Illinois standard in *Block.*

"Fraud in the common law sense of deceit is committed by deliberately misleading another by words (or) by acts...." *U.S. v. Dial,* 757 F.2d 163, 168 (7th Cir., 1985). It is "... the deliberate effort to obtain something of value by deceiving an-

other." *Krejci v. U.S. Army Material Dev. Readiness Command,* 733 F.2d 1278, 1281 (7th Cir., 1984).

■ The evidence at trial established that the foreclosure sale was judicially ordered and conducted by the Cook County Sheriff following the statutorily required public advertising. Debtor presented no evidence that the bank obtained the property through actual fraud, collusion, mistake, accident, surprise, misconduct, or that there were any irregularities connected with the sale. Debtor has therefore failed to carry her burden to show lack of reasonable equivalence of value and for that reason the sale is not avoidable under § 548(a)(2).

This is apparently a case of first impression in this District. For that reason it is appropriate in the interest of judicial economy to make additional fact findings in the event that a reviewing court would determine that the *Hulm* decision provides the correct standard of reasonable equivalence. Application of the federal standard of Bankruptcy Court determination expressed by the Eighth Circuit in *Hulm* to the evidence presented in this case would lead to the same conclusion that the transfers caused by the foreclosure sales were for a reasonably equivalent value.

The Eighth Circuit held in *In Re Hulm,* 738 F.2d 323 (8th Cir.) cert. denied — U.S. ——, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984), that "... the sale price at a regularly conducted foreclosure sale, although absent fraud or collusion, (cannot) automatically be deemed to provide a reasonably equivalent value ... without an evidentiary hearing." *Id.* at 327. Courts which have applied this reasoning have devised various methods for determining fair equivalence. These methods have been collected and outlined by the Bankruptcy Court in *In Re*

---

3. "Irregularity" has not been fully defined by the Illinois Courts but has been held to include selling a whole parcel when the property was subject to division because of multiple owners and sale of a smaller portion would have satisfied the debt, *Smith v. Huntoon,* 134 Ill. 24, 24 N.E. 971 (1890); failure to notify the owner of the time of sale, *Moeller v. Miller,* 315 Ill. 454,

146 N.E. 449 (1925); failure to serve execution of the foreclosure judgment upon a defendant, *Block v. Hooper,* 318 Ill. 182, 149 N.E. 21; and mistake by a Court official in informing the redeeming landowner of the amount necessary to redeem, *Skach v. Sykora,* 6 Ill.2d 215, 127 N.E.2d 453 (1955).

*Richardson*, 23 B.R. 434, 441 n. 11 (Bankr. Utah, 1982).

The most well-known method is commonly referred to as the *"Durrett* Rule" in which the bid price at a mortgage foreclosure is compared to the fair market value and if the ratio is less than 70%, the transfer is deemed fraudulent.

Should *Hulm* be followed by a reviewing Court, the preferable standard would be the "Richardson Test", *Id.* p. 441–442 n. 11, which compares the bid price at foreclosure sale to the equity remaining in the property after subtracting the post-sale liens from the fair market value of the property. The *"Richardson* Test" is the better approach because it is an accurate reflection of debtor's equity in the property as well as recognizing that the property transferred to the purchaser remains subject to outstanding encumbrances.

Debtor and the bank have agreed that the sale contracts reflect an accurate fair market value for each of the properties. Pursuant to those contracts, the fair market value for the Fullerton property is $33,000 and the fair market value for the Greenwood parcel is $65,000.

■ Debtor urged the Court to make its determination by considering the two properties as a single unit. We note that the two parcels are in different municipalities, are not contiguous, and are of a different nature [Fullerton being a vacant lot and Greenwood is debtor's residence]. However the properties were sold under the same foreclosure judgment and to the same bidder; the two properties should therefore be considered as a unit in determining fair equivalence of value.

■ The Fullerton Avenue property was sold for $18,000. In addition to real estate taxes, the property was encumbered by a judgment lien in favor of Sears, Roebuck & Company in the amount of $424.30, and, a demolition lien in favor of the Village of Elmwood Park in the amount of $2,785.00. These parties were joined in the foreclosure action and the liens are junior encumbrances to the bank's mortgage. The failure of either party to redeem within the statutory time period expunges the liens from the property. Under the *"Richardson* Test", these liens are not considered in determining fair equivalence.

Pursuant to Illinois statutory law, real estate taxes are a lien on the property as of January 1st of each year and superior to all encumbrances, including a first mortgage. ILL.REV.STAT. ch. 120, § 697. The taxes for years 1981 to present have not been paid by debtor and remain unpaid or have been the subject of a tax sale. The record indicates the following tax amounts will have to be paid by the record owner in order to obtain clear title:

| | |
|---|---|
| 1981 – sold and redeemed by the bank | $ 4,768.58 |
| 1982 – sold, with 1st Installment for 1984 paid by purchaser | 4,177.09 |
| 1983 – sold | 1,046.95 |
| 1984 – 2nd Installment (unpaid) | 358.15 |
| 1985 – lien as of 1/1/85 | (no evidence) |
| | $10,350.77 |

Applying the *"Richardson* Test" to these amounts:

| | | |
|---|---|---|
| FAIR MARKET VALUE | $33,000.00 | |
| LESS: POST–SALE LIENS | | 10,350.77 |
| DEBTOR'S EQUITY | $22,649.23 | |

The bank bid $18,000 for that property.

The Greenwood property has a fair market value of $65,000. The lien of Sears, Roebuck & Co. in the amount of $424.30 was expunged by the foreclosure judgment and no longer encumbers the property. The record indicates the following amounts for taxes.

| | |
|---|---:|
| 1981 – (sold) with 1982, 1983, and 1st Installment for 1984 paid by purchaser | $ 6,602.06 |
| 1984 – 2nd Installment (unpaid) | 363.24 |
| 1985 – (lien as of 1/1/85) | (no evidence) |
| | $ 6,965.37 |

Applying the "*Richardson* Test":

| | | |
|---|---:|---:|
| FAIR MARKET VALUE | $65,000.00 | |
| LESS: POST–SALE LIENS | | 6,965.30 |
| DEBTOR'S EQUITY | $58,034.73 | |

The bank bid $38,700 for that property.

▬ Thus, the bank bid a total of $56,700 for both properties which debtor had a total proved equity of $80,683.93; the bank therefore bid at 70.9% of that equity.

The "*Durrett* Rule", with its 70% threshold, would therefore require a finding that the bank's bids for the properties were at reasonably equivalent values.

### CONCLUSION

In short, this Court finds § 548(a)(2) applicable. But because the Sixth Circuit approval in *Winshall* is followed and debtor has not proved any evidence to justify relief under Illinois standards, lack of reasonable equivalence has not been established and the moving party must prevail. Should a higher court find that the *Durrett* approach to reasonable equivalence is correct, then the stay must still be modified because of the evidence taken and facts found as to debtor's equity and property values.

Accordingly, a separate final and appealable order has been entered granting the Motion of the First National Bank of Schiller Park to modify the automatic stay and proceed in state court as to the properties located at 7401 Fullerton Avenue in Elmwood Park, Illinois, and 9543 Greenwood Drive in Des Plaines, Illinois. No grounds have been shown for dismissal of this case, so the alternative motion to dismiss has been denied.